**Opinion issued March 17, 2016**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-14-01035-CR

_____

## JULIA JUAREZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Case No. 1422760**

---

## MEMORANDUM OPINION

After appellant, Julia Juarez, without an agreed punishment recommendation

from the State, pleaded guilty to the felony offense of manslaughter,[1] the trial court

---

[1]     *See* TEX. PENAL CODE ANN. § 19.04 (Vernon 2011).

assessed her punishment at confinement for fourteen years. In two issues, appellant contends that the trial court erred in considering extraneous-offense evidence when sentencing her and imposing a sentence disproportionate to the underlying offense.[2]

We affirm.

## Background

After appellant pleaded guilty, the trial court reset the case for a pre-sentence investigation ("PSI") hearing and ordered the preparation of a PSI report. According to the PSI report, appellant drove a car recklessly into the opposite lane of traffic, causing a head-on collision with a truck carrying four people. At the time of impact, appellant's car was traveling at 81.23 miles per hour in a forty-five-mile-per-hour speed zone. As a result of the collision, three people in the truck sustained injuries and were transported to a hospital. The complainant, who was a passenger in appellant's car, died as a result of the collision. Appellant, who sustained serious injuries, was transported by life flight to a hospital. Toxicology results, contained in the PSI report, reveal that appellant "had a blood alcohol result of 0.04g/100MI and was positive for Benzodiazepines."

The PSI report also reveals that in Montgomery County on July 18, 2013, two law enforcement officers "observed a small black passenger car pass them on the inside lane at a high rate of speed and chang[e] lanes without signaling." After the

---

[2]     *See* U.S. CONST. amend VIII.

officers initiated a traffic stop, the driver of the car gave them permission to search the car. During their search, the officers found "a clear see through plastic capsule" containing "a crystal like substance," which they recognized as methamphetamine. When the officers searched appellant, who was a passenger in the car, they found her in possession of a "clear plastic baggy with several of the same type of clear see through capsules . . . with residue inside of them." And inside of appellant's coin purse were "two plastic baggies with residue inside of them" as well.

At the PSI hearing, neither the State nor appellant objected to the admission into evidence of the PSI report, both sides affirmatively stated that they did not have any additions or deletions to make to the report, and the trial court admitted it into evidence. Appellant then testified that the complainant had been her "best friend" for two years. She explained that she had no memory of what happened on the day of the collision, having awakened in the hospital after being in a coma for three days. As a result of the collision, appellant's pelvis was broken in "six places," her femur was broken, and she required six surgeries. After she was released from the hospital seven to eight days later, she spent four months learning to walk again. Appellant did not remember drinking on the day of the collision, but she did not "contest[]" that the toxicology results show that she "had some alcohol in [her] system." She explained that she felt "[t]errible," did not "mean to cause" the complainant's death, and "guess[ed]" that the collision was her fault because she was the person driving.

3

Appellant conceded that, after the collision, she did not contact the complainant's mother or the four people in the truck.

Appellant further admitted that she had "been using drugs for the past several years on and off" and she was "arrested for possessing meth" on July 18, 2013, in Montgomery County. Moreover, her driver's license had been "suspended . . . five times due to repeated [traffic] tickets," and she had "three speeding ticket[s] on [her driving] record."

Following the parties' arguments on punishment, the trial court explained that it was not taking "into consideration" any "information about [appellant] being [out] on bond" in her Montgomery County possession case when the collision occurred or "any potential [bond] violations" that had been committed by appellant. And the trial court was "[c]ertainly" "not even thinking about" anything "that's not admissible." The trial court further explained that "what meant the most" to it was appellant's driving record, which showed that she had acted "reckless[ly] and without a []regard for the people around [her]," and this was all that the trial court "need[ed] to know." The trial court then found appellant guilty, found that she had used a deadly weapon, namely a motor vehicle, in the commission of the offense, and assessed her punishment.

Appellant then filed a motion for new trial, arguing that "[t]he verdict [was] contrary to the law and evidence." The record does not reflect that the trial court ruled on the motion, and it was thus overruled by operation of law.[3]

## Extraneous-Offense Evidence

In her first issue, appellant argues that the trial court erred in considering extraneous-offense evidence, i.e., evidence that she "had been charged with possession of a controlled substance in Montgomery County," when it sentenced her because such evidence may only be considered if established beyond a reasonable doubt. In response, the State asserts that appellant has not preserved this complaint for appellate review.[4]

In regard to appellant's arrest in Montgomery County for possession of a controlled substance, the PSI report, in pertinent part, states:

> On July 18, 2013, at approximately 7:25 p.m.[,] Lt. J. Buchanan and Deputy Hendrick . . . observed a small black passenger car pass them on the inside lane at a high rate of speed and chang[e] lanes without signaling. Lt. Buchanan initiated a traffic stop[,] and he observed [that] the vehicle was occupied by two white females.
>
> Lt. Buchanan approached the driver, identified as Cassandra Oretegon[,] and the female passenger was identified as [appellant] . . . . Lt. Buchanan asked [the driver] if she had any narcotics in the vehicle[,] and she stated [that] she didn't. Lt. Buchanan

---

[3]   *See* TEX. R. APP. P. 21.8(c).

[4]   An appellate court should not address the merits of an issue that is not preserved for appeal. *See Wilson v. State*, 311 S.W.3d 452, 473–74 (Tex. Crim. App. 2010). Accordingly, we express no opinion as to whether the trial court actually considered the extraneous-offense evidence when it sentenced appellant.

5

asked if he could search the vehicle[,] and she stated [that] he could. He asked [appellant] if there were any narcotics in the vehicle[,] and she said no. Lt. Buchanan asked both females if they had anything in their pockets and asked them if they would empty out their pockets and both did. Lt. Buchanan searched the vehicle and saw a green wallet lying on the middle console. He looked inside the wallet and saw a clear see through plastic capsule in the wallet with a crystal like substance inside of it. . . . Lt. Buchanan recognized the substance to be methamphetamine. He asked the females who owned the green wallet[,] and [the driver] stated [that] she did. [She] admitted [that] the substance found [by Lt. Buchanan] was going to test positive for "meth." Deputy Hendrick tested the substance[,] and [it] tested positive for methamphetamine. [The driver] stated she had a baggy inside her bra and a female officer was requested [to come] to the location. Lt. Buchanan searched a red purse which belong[ed] to [the driver] and found [a] methamphetamine pipe inside of a black baggy[,] and the black baggy also had methamphetamine residue inside of it.

Officer S. Acklin searched [appellant] and found a clear plastic baggy with several of the same type of clear see through capsules in it. Lt. Buchanan could see residue inside of the capsules. The baggy was found down the front of [appellant's] pants. [Appellant] was asked what else she had [i]n her possession[,] and she pointed to the back of her pants[, where] Officer Acklin found a small blue coin purse inside of her pants. Inside the coin purse w[ere] two plastic baggies with residue inside of them.

After arriving at the jail, both females were strip searched by a female jailer. Deputy Lara brought Lt. Buchanan a small blue plastic baggy with methamphetamine inside of it[, which was] found inside of [the driver's] underwear.

It is also noted in the PSI report that although appellant had been "arrested for possession of a controlled substance" in Montgomery County, the case had since been "dismissed."

6

Appellant also testified about her arrest in Montgomery County as follows, in pertinent part:

| | |
|---|---|
| [The State]: | You were arrested for possessing meth on July 18th, 2013, in Montgomery County about a couple months before this crash happened, right? |
| [Appellant]: | Yes. |
| [Appellant's Counsel]: | Judge, at this point I'd have to object to any line of questioning going into the Montgomery County criminal case. The statute of limitations has not passed. The State . . . did not refile. The State dismissed. But until the statute of limitations does pass, the State potentially could refile. And so, *[appellant] would have a Fifth Amendment right not to answer any questions by the State on the case*. |
| The Court: | Overruled. |
| [The State]: | . . . [D]id you possess meth that day? |
| [Appellant's Counsel]: | I'll object to that specific question, Judge. That amounts to a judicial confession compelled by the State at this point. |
| [The State]: | If she wants to invoke her Fifth Amendment right, she can. |
| . . . . | |
| [Appellant's Counsel]: | Judge, as that is *completely outside the scope of this -- the sentencing of this case* and as the State still could file that |

7

|  |  |
|---|---|
|  | until the statute of limitations runs, I have advised [appellant] that it is in her interest to not answer any questions based on that and *to invoke her Fifth Amendment right against self incrimination regarding potential cases that could come from Montgomery County.* |
| The Court: | Okay. Well, it's -- it's fine. We will leave it at that. |
|  | But I will say for purposes of the record at a sentencing hearing, I think I'm able to take into consideration anything, including unadjudicated offenses. But for the sake of just being careful, I suppose, I will -- |
| [Appellant's Counsel]: | And, Judge, I agree with you. You absolutely have that ability to do so. However, [the State] cannot compel that testimony from [appellant]. . . . |
| The Court: | And I understand that she has the right to take the Fifth, which is what y'all are doing here. I'm just saying that your initial objection to that being -- I think you said relevance . . . . |
| [Appellant's Counsel]: | Right. |
| The Court: | And I'm saying it is relevant. But if she wants to take the Fifth, she's free to do so. |

(Emphasis added.)

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. TEX. R. APP. P. 33.1(a)(1); *Everitt v. State*, 407 S.W.3d 259, 262–63 (Tex. Crim. App. 2013). Even claims involving constitutional error, including a claim that a defendant's due process rights were violated, must be preserved by objection or are waived. *Hull v. State*, 67 S.W.3d 215, 216–18 (Tex. Crim. App. 2002).

"The purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial [court] of the basis of the objection and give [it] the opportunity to rule on it; [and] (2) to give opposing counsel the opportunity to respond to the complaint." *Resendez v. State,* 306 S.W.3d 308, 312 (Tex. Crim. App. 2009). To preserve error, "a party must be specific enough so as to 'let the trial [court] know what [s]he wants, why [s]he thinks [her]self entitled to it, and do so clearly enough for the [trial court] to understand h[er] at a time when the trial court is in a proper position to do something about it.'" *Id.* at 312–13 (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). A party fails to preserve error when the contention urged on appeal does not comport with the specific complaint made in the trial court. *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009).

Here, we first note that the record shows that appellant did not object to the contents of the PSI report or to its admission into evidence, and she did not obtain a ruling from the trial court. *See* TEX. R. APP. P. 33.1(a); *see also Harris v. State*, 416 S.W.3d 50, 52 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (defendant's complaint "that the trial court's consideration of [certain] offenses alleged in [a] PSI was improper" not preserved for appellate review because when "asked by the trial court whether [defendant] had any objection to the admission of the state's presentence investigation report into evidence," his counsel replied, "No objection, Your Honor" (internal quotations omitted)). Instead, when the trial court asked appellant whether she had "any objections, additions or deletions to the [PSI] report," her counsel replied, "None from the defense, Your Honor." *Cf. Harris*, 416 S.W.3d at 52.

In regard to appellant's own testimony about her arrest in Montgomery County, we note that her counsel did not make her Fifth Amendment and relevance objections until *after* she had already affirmatively responded to the State's question as to whether she had been "arrested for possessing meth on July 18th, 2013, in Montgomery County." *See Berry v. State*, 233 S.W.3d 847, 856–57 (Tex. Crim. App. 2007) (error not preserved where objection "made after [witness] had already testified" about extraneous offense); *Hitt v. State*, 53 S.W.3d 697, 707–08 (Tex. App.—Austin 2001, pet. ref'd) ("Objections made after questions are asked and

answered do not preserve error."); *see also* TEX. R. APP. P. 33.1(a)(1); *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991) ("To preserve error for appellate review, the complaining party must make a *timely*, specific objection." (emphasis added)).

Moreover, on appeal, appellant has not advanced a relevance or a Fifth Amendment challenge as she did in the trial court. Rather, she now argues that the trial court "violate[d] [her] due process" rights in "consider[ing]," for purposes of sentencing, evidence that she "had been charged with possession of a controlled substance in Montgomery County" because the State did not "show[] beyond a reasonable doubt" that she committed the offense. Notably, where the complaint on appeal does not match the objection made at trial, the proffered complaint is waived. *See Lovill*, 319 S.W.3d at 691–92; *Hitt*, 53 S.W.3d at 708.

Finally, as noted above, evidence of appellant's arrest in Montgomery County was contained in the PSI report, which was admitted into evidence without objection. Because evidence about appellant's arrest in Montgomery County had previously been admitted without objection, appellant has waived any complaint that the trial court improperly considered her testimony about her Montgomery County arrest. *Ethington v. State*, 819 S.W.2d 854, 858–60 (Tex. Crim. App. 1991) (defendant must object each time evidence on particular subject matter offered, unless she makes

11

running or continuing objection or moves court outside presence of jury to consider admissibility of all evidence on particular subject matter).

Accordingly, we hold that appellant did not preserve her complaint that the trial court erred in considering that she "had been charged with possession of a controlled substance in Montgomery County" when it assessed her punishment.[5]

## Cruel and Unusual Punishment

In her second issue, appellant argues that the trial court erred in imposing a sentence "disproportionate to the offense for which she was charged," resulting in cruel and unusual punishment, because "[a]ppellant was eligible for probation," but "received a fourteen year prison sentence."[6]  *See* U.S. CONST. amend. VIII.  The

---

[5] We note that, although appellant filed a motion for new trial, the only contention that she made in her motion was that "[t]he verdict [was] contrary to the law and evidence."  The Texas Court of Criminal Appeals has explained that a claim that "a verdict was against the law and the evidence" raises only a sufficiency challenge to the evidence and does not present any other complaint. *State v. Zalman*, 400 S.W.3d 590, 594–95 (Tex. Crim. App. 2013).  Appellant has not raised a sufficiency challenge on appeal, and she cannot rely on her motion for new trial as preserving her complaint that the trial court erred in considering her Montgomery County arrest when it sentenced her.

[6] Appellant does not assert that her sentence constitutes cruel and unusual punishment in violation of the Texas Constitution, nor does she assert or show that the Texas Constitution provides greater protection than its federal counterpart. *See* TEX. CONST. art. I, § 13 (providing "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted").  Therefore, we do not consider whether her sentence violates the state constitution. *See Black v. State*, 26 S.W.3d 895, 896 n.4 (Tex. Crim. App. 2000).

12

State asserts that appellant has also not preserved her Eighth Amendment complaint for review.

The Eighth Amendment of the United States Constitution requires that a criminal sentence be proportionate to the crime for which a defendant has been convicted. *Solem v. Helm*, 463 U.S. 277, 290, 103 S. Ct. 3001, 3009 (1983). In order to preserve for appellate review a complaint that a sentence is grossly disproportionate, constituting cruel and unusual punishment, a defendant must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired. *See* TEX. R. APP. P. 33.1(a)(1); *Ladd v. State*, 3 S.W.3d 547, 564 (Tex. Crim. App. 1999) (concluding defendant did not preserve cruel and unusual punishment complaint for appellate review).

After the trial court announced her sentence, appellant did not object, obtain a ruling from the trial court, or raise her Eighth Amendment complaint in her motion for new trial.[7] *See* TEX. R. APP. P. 33.1(a); *Noland v. State*, 264 S.W.3d 144, 151–52 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) ("[I]n order to preserve for

---

[7] As noted above, appellant, in her motion for new trial, only argued that "[t]he verdict [was] contrary to the law and evidence." This did not preserve the Eighth Amendment complaint that she now advances on appeal. *See Castaneda v. State*, 135 S.W.3d 719, 723 & n.1 (Tex. App.—Dallas 2003, no pet.) (holding motion for new trial "merely alleg[ing] 'the verdict [was] contrary to the law and the evidence'" does not preserve complaint defendant's punishment "violates the cruel and unusual punishment clause of the Eighth Amendment"); *see also Zalman*, 400 S.W.3d at 594–95.

13

appellate review a complaint that a sentence is grossly disproportionate, constituting cruel and unusual punishment, a defendant must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired."). And appellant concedes in her brief that the "failure to raise an 8th Amendment objection at trial prevents [her from] making any claim on appeal." However, she asserts that this Court "can take note of fundamental error affecting a substantial right although it was not brought to the attention [of] the trial court."

In support of her fundamental-error argument, appellant does not provide us with any analysis of the issue and only includes a single citation to "Texas Rule[] of Evidence 103(b)" in her brief. *See* TEX. R. EVID. 103(b) ("When the court hears a party's objections outside the presence of the jury and rules that evidence is admissible, a party need not renew an objection to preserve a claim of error for appeal."). We, however, assume that she intended to cite rule 103(e), which provides: "In criminal cases, a court may take notice of a fundamental error affecting a substantial right, even if the claim of error was not properly preserved." *Id.* 103(e).

Regardless, appellant's argument concerning fundamental error is inadequately briefed, and, thus, waived. *See* TEX. R. APP. P. 38.1(i) (appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *Lucio v. State*, 351 S.W.3d 878, 896–97 (Tex. Crim. App. 2011) (point of error inadequately briefed "presents

14

nothing for review"); *Young v. State*, 425 S.W.3d 469, 473–74 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (fundamental-error argument inadequately briefed where defendant only provided citation to Texas Rule of Evidence 103(d) to support argument).

We note that even if appellant had adequately briefed her argument, a trial court's decision to impose a sentence that falls within the applicable statutory punishment range cannot constitute fundamental error. *Young*, 425 S.W.3d at 474 (sentence within statutory limits not fundamental error); *see also* TEX. PENAL CODE ANN. §§ 12.33(a) (punishment range for second-degree felony, imprisonment "for any term of not more than 20 years or less than 2 years"), 19.04(b) (Vernon 2011) (manslaughter constitutes second-degree felony offense).

## Conclusion

We affirm the judgment of the trial court.


Terry Jennings
Justice

Panel consists of Justices Jennings, Higley, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).