**AFFIRM; and Opinion Filed May 23, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-18-00243-CR

No. 05-18-00244-CR

**STEPHEN LAWRENCE PRICE, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 1**
**Dallas County, Texas**
**Trial Court Cause Nos. F14-47178-H, F16-47218-H**

## OPINION

Before Justices Schenck, Osborne, and Reichek
Opinion by Justice Schenck

Stephen Lawrence Price appeals his convictions for aggravated sexual assault and continuous sexual abuse of a child. In three issues, appellant argues the trial court erred by (1) allowing K.M. to testify about uncharged acts of sexual abuse, (2) failing to exclude evidence of extraneous offenses, and (3) allowing a magistrate to preside over jury selection. We affirm the trial court's judgments.

### BACKGROUND

The State charged appellant by indictments with aggravated sexual assault of B.J., a child, and continuous sexual abuse of C.J., a child. The State timely notified appellant that, pursuant to Article 38.37 of the code of criminal procedure, it intended to introduce evidence of extraneous

offenses during trial. The trial court referred both cases to a magistrate to conduct voir dire and jury selection.

After the jury was empaneled, and before the State proceeded with its case-in-chief, the trial court judge conducted a hearing on the admissibility of the extraneous offense evidence. Outside the presence of the jury, K.M., who, as a child, resided in the same home with appellant, testified about the acts of sexual abuse appellant committed against her when they resided together. At the time of trial, K.M. was thirty-eight years old. She is eight years younger than appellant. She explained that, when she was between the ages of four and nine, appellant subjected her to various acts of sexual abuse and she described those acts in detail. The trial court then heard argument as to the admissibility of K.M.'s testimony. The State directed the trial court to Article 38.37.[1] Appellant argued K.M. should not be allowed to testify because her testimony would be "more prejudicial than relevant." The trial court found K.M. to be credible and that the jury could believe her testimony beyond a reasonable doubt. The trial court impliedly found K.M.'s testimony would be more probative than prejudicial. *See* TEX. R. EVD. 403.

Appellant pleaded not guilty to both offenses, and the cases were presented to the same jury in a consolidated proceeding. The State called K.M. as its first witness. K.M. testified that when she was a young child her father was not home very often because his employment involved extensive travel. Appellant took advantage of her father's absence to abuse her. The abuse started when she was four years old and consisted of conduct undeniably within the coverage of Article 38.37. K.M. further testified that this behavior continued for over a year and, if she refused to comply with appellant's demands that she perform sexual acts, he would force feed her dog food. When she started kindergarten, the family moved to a new house. There, appellant would lock her

---

[1] Article 38.37 allows for the admission of evidence that the defendant committed sex crimes against children other than the victim of the alleged offense "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." TEX. CODE CRIM. PROC. ANN. art. 38.37 § 2(b).

in the bathroom with him and force her to perform oral sex on him and to have sexual intercourse with him. After they moved to another house, appellant would corner her in the backyard, force her into a trash-can, and make her perform oral sex on him. The assaults occurred weekly and continued until she was nine years old, when her father was able to spend more time at home. She told her mother about the abuse before she was an adult, but her mother did not believe her and called her a liar.

Appellant's estranged wife testified she has two daughters, B.J. and C.J., and one son. Appellant is not the father of any of her children. B.J. and C.J. both have developmental problems. More particularly, B.J. struggles with comprehension and learning and C.J. is speech delayed. She and her children lived with appellant from 2009 through 2013. During the time they lived with appellant, she held two jobs and was the primary income earner for the family. Appellant was not employed and was often left alone with the children.

B.J. told the jury that one time after appellant had dropped her mother off at work, he took her and C.J. into his room. She was seven or eight years old at the time and C.J. was five or six years old. She indicated that appellant locked the door and told her to take off all of her clothes. B.J. refused, and appellant forced her to remove her clothing. Appellant then threw her on the bed and had sex with her. She explained that appellant also had sex with C.J. When he finished, appellant told them to put their clothes back on and not to tell their mother. She did not tell anyone what happened until three or four weeks after her mother left appellant because she was afraid of appellant.

C.J. testified that they began living with appellant when she was younger than six. She testified to a variety of unlawful conduct, including appellant's having forced her to perform oral sex and engage in sexual intercourse. These acts usually occurred in her mother's bedroom and occurred approximately once a week. She also told the jury about a time appellant took her and

–3–

B.J. into the bedroom, made them strip, and made them watch adult television showing men and women having sex. The abuse started shortly after she met appellant and continued until she moved out of the house with her mother and sister. C.J.'s outcry took place approximately 30 months after B.J.'s outcry.

Following B.J.'s initial outcry, B.J. and C.J. were questioned by a forensic interviewer. During her interview, B.J. disclosed details of the experience she had with appellant. C.J. did not disclose any information that day and denied any illegal contact. During cross-examination, and again during closing argument, appellant's counsel emphasized the fact that C.J. initially denied any illegal contact by appellant and that she was now telling a different story. During C.J.'s second forensic interview, after her outcry, she disclosed the recurring instances of abuse by appellant. C.J. told the interviewer she did not tell her about the abuse during the first interview because she did not know her and she was afraid of appellant. C.J. told the interviewer that appellant pointed swords at her throat and threatened to harm her if she told anyone what he had done.

During appellant's case-in-chief, his mother and Ginger Price, the woman he considers to be his current wife, testified. Appellant's mother admitted that she was aware of the allegations K.M. had made against appellant, but claimed that she did not see any signs or symptoms of abuse as appellant and K.M. grew up. While no one else mentioned the presence of appellant's mother in the home, she stated she lived with B.J. and C.J. and took care of the girls until their mother and appellant divorced. Appellant's mother also testified that appellant had a long military career and that his military records were secret.

Ginger Price testified that she married appellant in November 2017. She began living with him after he and B.J. and C.J.'s mother separated. She claimed that appellant was an amazing father and was not violent. She asserted that appellant lost part of his penis during his military service as a result of a land-mine explosion. She described his penis as being scarred and mangled.

Appellant testified on his own behalf. He denied having committed any of the alleged abuse. He spoke extensively about his alleged military service, claiming that he enlisted in the National Guard after high school and rejoined the military after going on a mission with a church. He claimed to have been part of the "Sixth Air Force" special operations unit and to have been deployed on three tours in Iraq and two tours in Afghanistan. He insisted that national security prevented him from discussing details about those deployments. He introduced documents that purportedly evidenced his military service that he alleged were emailed to him by a friend at the Pentagon.

Prior to rebuttal, Assistant District Attorney Marissa Aulbaugh requested and obtained permission to require photographing of appellant's genitals. The photographer testified that appellant's penis appeared normal and was not mangled. A photograph of appellant's genitals was admitted into evidence.

The State also presented the testimony of Shawn Parks who worked as Diplomatic Security for the Department of State. He reviewed the records that the State obtained concerning appellant's military service. The records revealed that appellant did not finish basic training, had never been deployed overseas, and served in the Air Force for approximately six months before being discharged because of a personality disorder. He further testified that the service records submitted by appellant had been forged.

The jury found appellant guilty of both offenses and assessed his punishment at life imprisonment in each case. Appellant moved for a new trial. The motion was overruled by operation of law. This appeal followed.

DISCUSSION

## I.    Extraneous-Offense Evidence

In his first issue, appellant argues the trial court abused its discretion by admitting K.M.'s testimony over his objection under Article 38.37 of the code of criminal procedure.  We review a trial court's decision to admit or exclude evidence of extraneous offenses under an abuse of discretion standard.  *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011).  As long as the trial court's decision was within the zone of reasonable disagreement and was correct under any theory of law applicable to the case, it must be upheld.  *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).  This is so because trial courts are usually in the best position to make the determination as to whether certain evidence should be admitted or excluded.  *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007).

Article 38.37 allows for the admission of evidence that the defendant committed sex crimes against children other than the victim of the alleged offense "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant."  TEX. CODE CRIM. PRO. ANN. art. 38.37, § 2(b).  Before extraneous-offense evidence may be introduced, the trial court must determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt and must conduct a hearing outside the presence of the jury for that purpose.  *Id.* art. 38.37, § 2-a.

Appellant claims the trial court erred by concluding a jury could find beyond a reasonable doubt that he committed offenses against K.M. because the alleged events occurred a long time ago, and her allegations are uncorroborated and unsupported by physical evidence.  Appellant's first issue attacks the credibility of K.M.  We defer to the trial court's findings regarding witness credibility and demeanor.  *Guzman v. State*, 955 S.W.2d 85, 87–89 (Tex. Crim. App. 1997).  Here,

the trial court specifically found K.M. to be credible and that the jury could find her allegations true beyond a reasonable doubt. The record supports this determination. K.M. was able to clearly describe the abuse and included details concerning the attacks, including when and where they occurred. She further explained that the abuse stopped only when her father was able to be home more often, denying appellant the opportunity to engage in long, secluded encounters with her. The lack of physical evidence is not surprising given the abuse occurred decades before K.M. testified and is often lacking in cases involving allegations of unlawful contact with a child. Accordingly, the trial court did not abuse its discretion in concluding K.M.'s testimony was credible and that the jury could find beyond a reasonable doubt that appellant committed the offenses K.M. alleged. We overrule appellant's first issue.

In his second issue, appellant argues the trial court should have excluded testimony of his prior sexual abuse of K.M. under Rule 403 of the Texas Rules of Evidence.[2] TEX. R. EVID. 403.[3] Rule 403 authorizes a trial court to exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. *Id.* Probative value is the measure of how strongly the evidence serves to make more or less probable the existence of a fact of consequence to the litigation coupled with the proponent's need for the item of evidence. *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). Unfair prejudice refers to the tendency to tempt the jury into finding guilt on grounds apart from proof of the offense charged. *State v. Mechler*, 153 S.W.3d

---

[2] Appellant did not specifically mention Rule 403 during his argument before the trial court concerning the admissibility of K.M.'s testimony, but he did urge that her testimony was "more prejudicial than relevant," which was sufficient to apprise the trial court of his Rule 403 complaint. C.f. *Checo v. State*, 402 S.W.3d 440 S.W.3d 440, 451 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd); *see also Layton v. State*, 280 S.W.3d 235, 239 (Tex. Crim. App. 2009).

[3] In determining whether the trial court abused its discretion in admitting the evidence, we balance the inherent probative force of the proffered item of evidence along with the proponent's need for that evidence against (1) any tendency of the evidence to suggest a decision on an improper basis, (2) any tendency of the evidence to confuse or distract the jury from the main issues, (3) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (4) the likelihood that the presentation of the evidence will consume an inordinate amount of timely or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). These factors may blend together in practice. *Id.* at 642.

435, 440 (Tex. Crim. App. 2005). Evidence might be unfairly prejudicial if it arouses the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence. *Gigliobianco*, 210 S.W.3d at 641. Confusion of the issues refers to a tendency to confuse or distract the jury from the main issues in the case. *Id.* Misleading the jury refers to a tendency of an item of evidence to be given undue weight by the jury on other than emotional grounds. *Id.*

Rule 403 does not require that the trial court perform the balancing test on the record. *Hitt v. State*, 53 S.W.3d 697, 706 (Tex. App.—Austin 2001, pet. ref'd). In overruling a Rule 403 objection, the trial court is assumed to have performed a Rule 403 balancing test and determined the evidence was admissible. *Id.* There is a presumption that relevant evidence is more probative than prejudicial. *Williams v. State*, 958 S.W.2d 186, 196 (Tex. Crim. App. 1997). In reviewing the trial court's balancing determination under Rule 403, we are to "reverse the trial court's judgment rarely and only after a clear abuse of discretion." *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999).

Appellant does not explicitly state the basis for his contention that he was unfairly prejudiced by the admission of K.M.'s testimony. It appears appellant's complaint is that by allowing the State to present evidence of specific prior offending behavior he committed against someone other than the complainant, the jury is unjustly impressed with evidence of his character to offend and, thus, likely to draw the inference that he is more likely to have engaged in the charged offenses. To be sure, that evidence of character and the propensity inference it suggests is precluded in most criminal trials by rule of evidence 404. *See* EVID. 404(a). The very purpose of Article 38.37, however, is to reverse that rule and allow a jury to consider evidence that the defendant committed other acts of sexual misconduct precisely because of its relevance to the actor's propensity to commit the crime charged. *See* David J. Karp, *Symposium on the Admission of Prior Offense Evidence in Sexual Assault Cases: Evidence of Propensity and Probability in Sex*

*Offense Cases and Other Cases*, 70 CHICAGO–KENT L. REV. 15 (1994) (discussing purpose underlying federal law antecedent to Article 38.37). We have previously confirmed the legislature's authority to alter the rule and rejected a due process challenge to its operation. *See Fronek v. State*, No. 05-14-01118-CR, 2016 WL 3144243, at *4 (Tex. App.—Dallas June 6, 2016, pet. ref'd) (mem. op., not designated for publication). In all events, even without the unique character-proving aspect of Article 38.37, evidence of a prior crime, wrong, or other act has historically been held to be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. EVID. 404(b)(2). The probative value of extraneous offense evidence in these cases is presumptively very high, and the Rule 403 balancing test normally will not favor the exclusion of evidence of the defendant's prior sexual assaults of children. *See Belcher v. State*, 474 S.W.3d 840, 848 (Tex. App.—Tyler 2015, no pet.); *see also* David J. Karp, *Symposium on the Admission of Prior Offense Evidence in Sexual Assault Cases: Evidence of Propensity and Probability in Sex Offense Cases and Other Cases*, 70 CHICAGO–KENT L. REV. at 19, 31.

Especially in cases like this one, where there is little or no physical evidence to support the complainants' accusations, the credibility of the complainants is a focal issue in the case. Particularly in light of the complainants' developmental issues, C.J.'s initial denial of abuse and delayed outcry, and the case being one of "he said, she said," the evidence that appellant sexually abused another child has considerable probative force quite apart from its tendency to show character or propensity to offend. *See Alvarez v. State*, 491 S.W.3d 362, 371 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd); *Belcher*, 474 S.W.3d at 848. Moreover, in this case the trial court could have reasonably concluded that the inherent probative force of K.M.'s testimony was considerable because the testimony detailed instances of abuse that were remarkably similar to the abuse alleged by B.J. and C.J., including the specific acts of abuse and the ages when the abuse

occurred.  *See Gayton v. State*, 331 S.W.3d 218, 227 (Tex. App.—Austin 2011, pet. ref'd) ("[B]ecause the [extraneous offense] testimony was remarkably similar to [the complainant's], the trial court could have reasonably found that its inherent probative force was significantly bolstered.") (footnote omitted); *Distefano v. State*, 532 S.W.3d 25, 32 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).  In addition, K.M.'s testimony established appellant's modus operandi of isolating, intimidating, and controlling his victims, and tended to contradict appellant's contention that he did not engage in the charged offenses.  *See Taylor v. State*, 920 S.W.2d 319, 322 (Tex. Crim. App. 1996).  Thus, we conclude the probative force of the evidence and the need to establish appellant committed the charged offenses and to counter attacks on B.J.'s and C.J.'s credibility weighed in favor of the admission of K.M.'s testimony.

The evidence that appellant sexually abused K.M. in addition to B.J. and C.J. was clearly prejudicial to his case, but the question in a Rule 403 analysis is whether the evidence was *unfairly* prejudicial.  *See Bradshaw v. State*, 466 S.W.3d 875, 883 (Tex. App.—Texarkana 2015, pet. ref'd) (noting that Rule 403 does not allow exclusion of otherwise relevant evidence when evidence is merely prejudicial).  The focus of Rule 403 is to assure that the danger of *unfair* prejudice is not substantially outweighed by the probative value of proffered evidence.  Given Article 38.37 was designed, at least in part, to allow the State to introduce evidence of the accused's prior or subsequent bad acts to show the accused's propensity to commit the charged offense, the calculus of what is unfair and what is probative has materially changed.  Appellant does not identify any particular facts about K.M.'s testimony that make it uniquely or unfairly prejudicial.  *See Alvarez*, 491 S.W.3d at 371.

As to whether K.M.'s testimony concerning uncharged acts suggested an improper basis for decision or created a risk of confusion of issues, in that the jury might convict for the prior conduct, rather than the charged conduct, those risks were addressed by the trial court's instruction

–10–

that the jury not consider K.M.'s testimony unless it believed appellant committed the acts she alleged beyond a reasonable doubt and then to consider the testimony only for the enumerated purposes.[4]  We presume that the jury follows the trial court's instructions in the manner presented. *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005).  An appellant may refute this presumption, but he must rebut it by pointing to evidence that the jury failed to follow the instruction. *Id.*  Appellant has not identified any such evidence in this case.  Therefore, the trial court could have reasonably concluded that the jury would not give K.M.'s testimony undue weight or her testimony would not confuse the issues.

Moreover, K.M.'s testimony was not repetitive and did not consume an inordinate amount of time.  The guilt-innocence phase of trial lasted only two days, the cases were relatively simple and straightforward and did not necessitate lengthy testimony, the testimony of K.M. before the jury is contained in 24 pages of the trial transcript, which totals more than 400 pages, and the State did not place undue emphasis on the extraneous offense evidence.  *See Le v. State*, 479 S.W.3d 462, 471 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

Having considered the relevant factors, we conclude that the trial court reasonably could have determined that the prejudicial effect of K.M.'s testimony did not substantially outweigh its probative value. We therefore conclude that the trial court did not abuse its discretion in overruling appellant's objection to K.M.'s testimony.  We overrule appellant's second issue.

---

[4] The jury charge instructed the jury, in part, "if there is testimony before you in this case regarding the defendant having committed offenses, if any, other than the offense described in this paragraph, if any, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed.  Then you may consider the same for any bearing it has on relevant matters, including:

    a)    To determine motive, intent, scheme, or design, if any, of the Defendant;

    b)    To determine the state of mind of the Defendant and the child;

    c)    For its bearing on the previous and subsequent relationship between the Defendant and the child;

    d)    For any bearing it has on the character of the Defendant and acts performed in conformity with the character of the Defendant."

This instruction is in material compliance with Article 38.37 and Rule 404(b)(2). *See* Crim. Pro. art. 38.37; Evid. 404(b)(2).

## II.     Jury Selection before Magistrate

In his final issue, appellant claims the trial court committed reversible error by referring jury selection to the magistrate. As an initial matter, we note that appellant failed to object to the magistrate's presiding over jury selection; accordingly, appellant has waived this complaint. TEX. R. APP. P. 33.1(a)(1)(B).

Even if appellant had preserved this complaint for review, we would find against appellant on this issue. Section 54.306(a) of the Texas Government Code specifies which proceedings may be referred to a criminal law magistrate.[5] The primary limitation on a referral is that the magistrate may not preside over a "trial on the merits." TEX. GOV'T CODE ANN. § 54.306(b). A "trial on the merits" begins when the jury is impaneled and sworn. *Garner v. State*, 523 S.W.3d 266, 276 (Tex. App.—Dallas 2017, no pet.). Jury selection is not a "trial on the merits." *Id* at 277. Thus, a magistrate may preside over jury selection. *See id.* Accordingly, the trial court did not err in referring voir dire and jury selection to the magistrate. We overrule appellant's third issue.

---

[5] Section 54.306(a) provides:

(a)   A judge may refer to a magistrate any matter arising out of a criminal case involving:

   (1)   a negotiated plea of guilty or nolo contendere before the court;

   (2)   a bond forfeiture;

   (3)   a pretrial motion;

   (4)   a postconviction writ of habeas corpus;

   (5)   an examining trial;

   (6)   an occupational driver's license;

   (7)   an appeal of an administrative driver's license revocation hearing; and

   (8)   any other matter the judge considers necessary and proper.

TEX. GOV'T CODE ANN. § 54.306(a).

## CONCLUSION

We affirm the trial court's judgments.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

DO NOT PUBLISH
TEX. R. APP. P. 47

180243F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

STEPHEN LAWRENCE PRICE,
Appellant

No. 05-18-00243-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 1, Dallas County, Texas
Trial Court Cause No. F14-47178-H.
Opinion delivered by Justice Schenck.
Justices Osborne and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 23rd day of May, 2019.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

STEPHEN LAWRENCE PRICE,
Appellant

No. 05-18-00244-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 1, Dallas County, Texas
Trial Court Cause No. F16-47218-H.
Opinion delivered by Justice Schenck.
Justices Osborne and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 23rd day of May, 2019.