# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-99-00865-CR

---

**Jonathon Irving Hitt, a/k/a Father Jeremiah,  Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF BLANCO COUNTY, 33RD JUDICIAL DISTRICT
NO. 691, HONORABLE GUILFORD L. JONES, III, JUDGE PRESIDING**

---

A jury found appellant Jonathon Irving Hitt, also known as Father Jeremiah, guilty of five counts of indecency with a child by sexual contact and three counts of indecency with a child by exposure.  *See* Tex. Penal Code Ann. § 21.11 (West Supp. 2001).[1]  The jury assessed ten years' imprisonment for each count of indecency by contact and three years' imprisonment for each count of indecency by exposure.  The sentences were made to run concurrently.

### Points of Error

Appellant advances four points of error.  First, appellant complains that the trial court erred when it admitted into evidence "extraneous bad acts."  Second, appellant urges that the trial court erred in permitting Susan Packwood, a social worker-psychotherapist, to testify that the

---

[1] The current code is cited for convenience.  Appellant was tried under Act of May 29, 1993, 73d Leg., R.S., ch. 900 § 1.01, 1993 Tex. Gen. Laws 3586, 3616 (Tex. Penal Code § 21.11 since amended).  The 1999 amendments to section 21.11 are not applicable here.

complainant-child "was telling the truth." Third, appellant contends that the trial court erred when it excluded from evidence the psychiatric report on the child by Dr. Elizabeth Dybel. Fourth, appellant challenges the factual sufficiency of the evidence to sustain the convictions. We will affirm the conviction.

**Background**

S.S. was born on September 22, 1985.[2] He was brought to the Christ of the Hills Monastery in Blanco County by his mother, Abba St. Germaine, when he was eight and a half or nine years old. She felt his schooling there and the surroundings might be the answer to the difficulties S.S. had experienced in the first and second grades of school in Houston and in a fatherless home.

St. Germaine first visited the monastery when she was three months pregnant with S.S. at the suggestions of friends. Thereafter, she often visited the monastery and became acquainted with the members of the institution, which was associated with the Russian Orthodox Church. St. Germaine related that she was married at the monastery[3] and that S.S. was baptized there. A monk at the monastery, Father Benedict (Sam Green), was godfather to S. S.

St. Germaine knew there was no formal school at the monastery at the time she left S.S. there. There were plans for starting a school, however, and it was understood that S.S. would

---

[2] The complainant's name in the indictment was a pseudonym. *See* Tex. Code Crim. Proc. Ann. art. 57.02(b)(f) (West Supp. 2001); *Stevens v. State*, 891 S.W.2d 649, 651 (Tex. Crim. App. 1995). Appellant raises no issue concerning the use of the pseudonym. We will refer to the complainant as "S.S." in this opinion.

[3] The details of her marriage and subsequent divorce were not fully developed at trial.

2

receive instructions from the monks until then. At first, St. Germaine was pleased with S.S.'s progress and emotional growth, but she later became concerned about S.S.'s schooling.

After about a year and a half, S.S. was expelled or asked to leave the monastery because the residents there were frustrated and angry about S.S.'s conduct. Appellant later flew to Houston to consult with St. Germaine. It was decided that S.S. should return to the monastery. Sometime after his return, S.S. was permitted to become a novice. St. Germaine became irritated because the monastery did not consult her before permitting S. S. to become a novice and because the monastery did not cooperate with an Austin company she retained to assist the monastery with S.S.'s education. On St. Germaine's visits to the monastery, S.S. denied any physical or sexual abuse and she observed no change in his personality or behavior.

Subsequently, there was a group meeting at the monastery to confront S.S. about his veracity, his lack of responsibility in avoiding his fair share of work assignments, and his attempts to get other children at the monastery in trouble with the monks. After the group's grievances were discussed, another meeting was scheduled to focus on a remedy. St. Germaine withdrew S.S. from the monastery in November 1997 prior to the second meeting.

After S.S.'s return to Houston, individuals at the monastery called to inquire about his welfare. S.S. refused to talk to them. St. Germaine also received a telephone call from Michael Woodson, a San Antonio attorney, inquiring why S.S. had been removed from the monastery and imparting certain information to her. Some months after S.S. left the monastery, he had difficulties with a coach at his public school. St. Germaine asked S.S. why he seemed to have trouble with male authority figures. S.S. blurted out that appellant had raped him twice while he was at the monastery.

3

S.S. subsequently gave a statement to the Blanco County district attorney that he had been raped nine times by appellant.

S.S. was fourteen years old at the time of the October 1999 trial. He testified that in the summer of 1997, before his twelfth birthday, appellant began inviting him to spend Saturday nights at the Elder House on the grounds of the monastery. Father Benedict and his elderly mother lived there with appellant. The house was air conditioned, unlike S.S.'s regular sleeping quarters. S.S. slept in a room with appellant which contained twin beds. The second night S.S. was there, appellant climbed into his bed and slept with him. On another night, while in bed with S.S., appellant began hugging S.S. and kissing him on the cheek and neck. S.S. felt awkward, confused, and embarrassed, but did not say anything to appellant.

On a night in June 1997, appellant took off all his clothes and crawled into bed with S.S. During that night, appellant hugged and kissed S.S., who was scared and felt that "it was really wrong." The next day, Father Benedict sent for S.S. and told him that appellant had revealed the incident. Father Benedict instructed S. S. that the conduct was "perfectly okay" and S.S. was not to tell anyone, especially his mother.

S.S. testified that on another night appellant, completely naked, got in bed with him and tried to take S.S.'s clothes off, but did not succeed. S.S. related that appellant had an erection and he could feel appellant's genitals on his body. S.S. was instructed to get on top of appellant and he believed appellant was moving underneath him while with an erection. Three or four weeks later, appellant had S.S. take his clothes off, and while they were both naked, told S.S. to get on top

4

of him in S.S.'s bed. S.S. could feel appellant's genitals on his body. Appellant ejaculated during this incident.

S.S. testified that a number of these incidents occurred in June, July, and August 1997, but he could not keep up with all the dates. He testified that the last time he and appellant were together nude in his bed, appellant had him touch appellant's genitals, and that appellant ejaculated. Despite Father Benedict's advice, S.S. felt repulsed, ashamed, and that it was wrong. S.S. did not make an earlier outcry because he was scared.

Michelle Howard, a housekeeper at the Elder House, testified that when she cleaned house on Sunday mornings, she frequently found only one bed had been used in the bedroom where appellant and S.S. had spent the night. Richard Martinez and Charles Belcher, a printer and a professor employed at the monastery, said they saw appellant and S.S. on a bed together in a small room off the monastery's kitchen on different occasions prior to the times alleged in the indictment. They were fully clothed on each occasion. Susan Packwood, a social worker and psychotherapist, treated S.S. for nine months after his delayed outcry to his mother. She testified that S.S. exhibited the behavior characteristic of a child who had been sexually abused.

The defense witnesses included Dr. Robert Leo Jimenez, a psychiatrist from San Antonio. Appellant had gone to Dr. Jimenez and asked for an evaluation. Dr. Jimenez testified that he listened to appellant's account of events and told appellant that he would have to be tested to see if appellant was being truthful. Appellant was given a battery of psychological tests by Dr. Gary Bernard, whose report was studied by Dr. Jimenez. In analyzing the test results, Dr. Jimenez concluded that appellant was "telling the truth"; that there was "not a shred of evidence" that

appellant fit the profile of a pedophile; and that appellant had come from a very good family and not the type of "family background that I have just described."

The art teacher at the monastery and three former students testified that S.S.'s reputation for truthfulness was "bad." Some of these witnesses were allowed to describe incidents or difficulties S.S. had created.

At the monastery, Alma O'Hair, a one-time close friend of S.S.'s mother, related that she introduced St. Germaine to the monks at the monastery. She testified that while S.S. was at the monastery, St. Germaine revealed to her that she had strong romantic feelings for appellant. St. Germaine had earlier denied having such feelings.

Appellant testified to his background, his seminary training, and his becoming Father Jeremiah. He was opposed to accepting S.S. at the monastery at the time when no school existed. He described his efforts to assist S.S., S.S.'s expulsion from the monastery, his own trip to Houston to discuss S.S.'s future, and the decision to allow S.S. to return to the monastery. Appellant stated that S.S.'s mother had expressed her strong romantic feelings for him and that he rebuffed her because of his vows of celibacy.

Appellant denied ever having been in bed with S.S., and specifically denied the allegations in the indictment and any other acts of sexual abuse. He related that as a result of the criminal charges, he was now a suspended monk "in limbo" and that the Russian Orthodox Church had withdrawn authorization for the monastery. Appellant mentioned the civil lawsuit against the monastery brought by S.S. and his mother subsequent to the criminal charges being filed.

In rebuttal, the State called Dr. David Poole, a psychologist from Austin. Dr. Poole testified that he had examined the psychological report on appellant prepared by Dr. Bernard for Dr. Jimenez. He said,

> All you have reflected in the test results is that apparently if sex abuse did occur that it wasn't as a result of a mental illness, it wasn't a result of a personality disorder and that there appears to be no significant abiding guilt or anxiety associated with the act if it occurred.

Dr. Poole added that no one can tell from psychological testing whether certain acts such as sexual abuse occurred.

**Extraneous Matters**

In his first point of error, appellant contends that "the trial court erred when it admitted appellant's extraneous bad acts." The complaint involves the testimony of State's witnesses Martinez and Belcher. Martinez stated that he worked in the print shop at the monastery from approximately 1994 to 1996. On one occasion, he entered the kitchen and as he did he looked into a small room with a bed next to the kitchen. Martinez saw appellant and S.S. on the bed together, fully clothed. Martinez reported that when appellant saw Martinez, appellant appeared shocked and startled. S.S. was facing the wall, and Martinez did not see his face. Martinez immediately returned to the print shop and did not pursue the matter at the time.

Belcher, a college professor, related that he was employed at the monastery from June to November 1995. One afternoon, Belcher went to the kitchen to fix himself a sandwich. As he prepared his sandwich, Belcher saw appellant and S.S. lying on the bed in the adjoining darkened

sleeping area. Appellant was on his back and S.S. was on top of him. Appellant appeared "real surprised" when he saw Belcher. Appellant jumped up and said, "I was just, I was just." Belcher left immediately and returned to his work station. He did not report the matter to anyone at the time.

Appellant objected to Martinez's and Belcher's testimony on the basis of Rule 404(b). Tex. R. Evid. 404(b).[4] The objection was overruled. The trial court ruled that the evidence was admissible under the terms of article 38.37. Tex. Code Crim. Proc. Ann. art. 38.37 (West Supp. 2001).[5]

---

[4] Rule 404(b) provides:

(b) *Other Crimes, Wrongs or Acts.* Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

[5] Article 38.37 provides:

Sec. 1. This article applies to a proceeding in the prosecution of a defendant for an offense under the following provisions of the Penal Code, if committed against a child under 17 years of age:

(1) Chapter 21 (Sexual Offenses);

(2) Chapter 22 (Assaultive Offenses);

(3) Section 25.02 (Prohibited Sexual Conduct);

(4) Section 43.25 (Sexual Performance by a Child); or

(5) an attempt or conspiracy to commit an offense listed in this section.

Sec. 2. *Notwithstanding Rules 404 and 405*, Texas Rules of Criminal Evidence,

An evidentiary statute trumps a rule of evidence adopted by the courts. The Texas Constitution specifically authorizes the legislature to write rules of evidence. Tex. Const. art V, § 31. While certain legislative functions vested in the legislature may not be delegated, article V, section 31(c) permits the legislature to partially delegate its evidentiary rule-making authority to the judiciary. *Id*. art V, § 31(c); *Jackson v. State*, 861 S.W.2d 259, 261 (Tex. App.—Dallas 1993, no pet.). The legislature has partially delegated its authority in this field to the Court of Criminal Appeals. *See* Tex. Gov't Code Ann. § 22.109 (West 1988); *see also id*. § 22.108 (West Supp. 2001) (concerning the rules of appellate procedure). Article V, section 31 of the state constitution and section 22.109 of the government code expressly reserve to the legislature the right to disapprove of the rules of evidence promulgated by the Court of Criminal Appeals. *Jackson*, 861 S.W.2d at 261.

---

evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:

(1) the state of mind of the defendant and the child; and

(2) the previous and subsequent relationship between the defendant and the child.

Sec. 3. On timely request by the defendant, the state shall give the defendant notice of the state's intent to introduce in the case in chief evidence described by Section 2 in the same manner as the state is required to give notice under Rule 404(b), Texas Rules of Criminal Evidence.

Sec. 4. This article does not limit the admissibility of evidence of extraneous crimes, wrongs, or acts under any other applicable law.

(Emphasis added).

Article 38.37 is an evidentiary rule, enacted by the legislature, limited to certain designated offenses. Act of May 29, 1995, 74th Leg., R.S., ch. 318, §48, 1995 Tex. Gen. Laws 2734, 2748-49. The enactment is entirely consistent with the concept of limited delegation articulated in the state constitution and the government code. *Jackson*, 861 S.W.2d at 261. By its express terms, article 38.37, section 2 creates an exception to Texas Rules of Evidence 404 and 405. Article 38.37, section 2 supersedes in certain sexual abuse cases the application of Texas Rules of Evidence 402 and 404.[6] *See Conrad v. State*, 10 S.W.3d 43, 46 (Tex. App. —Texarkana 1999, no pet.) (citing *Howland v. State*, 966 S.W.2d 98, 103 (Tex. App.—Houston [1st Dist.] 1998), *aff'd on other grounds*, 990 S.W.2d 274 (Tex. Crim. App. 1999)).

> Contrary to appellant's suggestion, article 38.37 *does* supersede application of rule 402. By enacting article 38.37, the legislature in effect determined that, in certain sexual abuse cases, evidence of "other crimes, wrongs, or acts" committed by the accused against the child victim *are* relevant and admissible under rule 402. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2 (Vernon Pamph. 1998) (noting that evidence shall be admitted *for its bearing on relevant matters* including state of mind and parties' previous and subsequent relationship).

*Hinds v. State,* 970 S.W.2d 33, 35 (Tex. App.—Dallas 1998, no pet.).

The trial court did not err by overruling appellant's Rule 404(b) objection and admitting the testimony of Martinez and Belcher under article 38.37.

---

[6] Rule 402 provides:

All relevant evidence is admissible, except as otherwise provided by Constitution, by statue, by these rules, or by other rules prescribed pursuant to statutory authority. Evidence which is not relevant is inadmissible.

Tex. R. Evid 402

**Notice**

Appellant further contends that Martinez's and Belcher's testimony should have been excluded under article 38.37 because he was not given timely notice that the State intended to use the testimony in its case-in-chief. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 3. Appellant concedes that he did not make a timely request for such evidence under section 3 of article 38.37, but relies upon his timely request for evidence of extraneous matters expressly made under Rule 404(b).[7]

In *McCoy v. State*, 10 S.W.3d 50 (Tex. App.—Amarillo 1999, no pet.), the court stated:

> The statute [article 38.37] does provide that upon "timely request", the State must give notice of its intent to introduce such evidence. In this case, no such request for notice was made, and no notice given by the State specified that it was given to comply with article 38.37. However, the State did give notice of its intent to use evidence *of other acts* in response to a Rule 404(b) request.

*Id.* at 53 (emphasis added).

*McCoy* is similar to the instant case as the State gave notice of its intention to use other acts in response to appellant's request under Rule 404(b), but did not include the testimony in question as no request was made under article 38.37, section 3. In *McCoy*, the State raised

---

[7] The request was entitled:

Request for notice of State's intention to introduce bad acts, extraneous offenses, or other misconduct on the part of the defendant at the trial of this case pursuant to Texas Rule of Criminal Evidence, Rule 404(b).

article 38.37 for the first time on appeal to justify the admission of the evidence at issue. *Id*. Without addressing the notice question more specifically, the *McCoy* court stated:

> The fact that the benefit of the statute was not specifically invoked by the State at trial does not prevent it from being applicable in our consideration of the challenge before us. The statute's provisions authorizing the admission of the evidence in question is dispositive of appellant's Rule 402, 404(b) and 405 challenges.

*Id.* at 54.

Article 38.37 put appellant's counsel on notice of the evidentiary procedure required "[n]otwithstanding Rule 404." Appellant argues that article 38.37, section 3 refers to Rule 404(b). Indeed it does, but the reference is to the nature of the State's response to a timely request made under article 38.37. The reference is not to the required request. No timely request for notice under article 38.37 having been made, the evidence was admissible.

## Rule 403

Appellant further contends that the extraneous act evidence should not have been admitted because the trial court refused to conduct a balancing test under Rule 403 before the evidence was introduced. *See* Tex. R. Evid. 403.[8]

---

[8] Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

Tex. R. Evid 403

12

When evidence of a defendant's extraneous acts is relevant under article 38.37, the trial court is still required to conduct a Rule 403 balancing test upon a proper objection or request. *Walker v. State*, 4 S.W.3d 98, 103 (Tex. App.—Waco 1999, pet. ref'd); *Poole v. State*, 974 S.W.2d 892, 897 (Tex. App.—Austin 1998, pet. ref'd); *Ernst v. State*, 971 S.W.2d 698, 700-01 (Tex. App.—Austin 1998, no pet.); *see also Stahle v. State*, 970 S.W.2d 682, 689 (Tex. App.—Dallas 1998, pet. ref'd); *Hinds*, 970 S.W.2d at 35. However, in *Jenkins v. State*, 993 S.W.2d 133, 137 (Tex. App.—Tyler 1999, pet. ref'd), both parties agreed that the legislature in enacting article 38.37 had already conducted the balancing test required by Rule 403 and determined that evidence admissible under article 38.37 does not offend Rule 403.

Rule 403 does not require that the balancing test be performed on the record. *Yates v. State*, 941 S.W.2d 357, 367 (Tex. App.—Waco 1997, pet. ref'd). In overruling a Rule 403 objection, the trial court is assumed to have applied a Rule 403 balancing test and determined the evidence was admissible. *Id.*; *Poole*, 974 S.W.2d at 897. In the instant case, there were two hearings in the absence of the jury where notice under article 38.37 and the application of Rule 403 to Belcher's and Martinez's testimony were jointly discussed. Relevance, probative value, and prejudice were part and parcel of this colloquy. The evidence was admitted as relevant and admissible under article 38.37, the trial court finding the evidence probative as showing the previous relationship between the parties and bearing on their states of mind. The trial court expressly concluded there was no unfair prejudice. It certainly appears that a Rule 403 balancing test was performed on the record. The trial court, however, stated that it did not believe Rule 403 applied because the evidence did not

involve "bad acts,"[9] and it would not apply the rule. From this stems appellant's claim that the trial court refused to perform the balancing test. Since the balancing test had in effect already been performed, the trial court's statement of "no application" is rather meaningless. If a trial court's action is correct, although incorrect or insufficient reasons are given, no reversal will follow, especially with regard to the admission of evidence. *McDuff v. State*, 939 S.W.2d 607, 619 (Tex. Crim. App. 1997); *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

Under the circumstances presented, any error in the trial court's conclusion about the application of Rule 403 does not entitle appellant to the relief requested. There was no abuse of discretion in admitting the evidence. Point of error one is overruled.

### Packwood's Testimony

In point of error two, appellant claims that the "trial court erred when it let Susan Packwood testify that the [complainant] was telling the truth."

Expert testimony that a child exhibits behavioral characteristics that have been empirically shown to be common among children who have been sexually abused is relevant and admissible as substantive evidence under Texas Rule of Evidence 702. *Vasquez v. State*, 975 S.W.2d 415, 417 (Tex. App.—Austin 1998, pet. ref'd) (citing *Yount v. State*, 872 S.W.2d 706, 709 (Tex. Crim. App. 1993); *Cohn v. State*, 849 S.W.2d 817, 819-21 (Tex. Crim. App. 1993)). An expert witness may not however, testify directly that a particular witness is truthful, or that a class of persons to which the particular witness belongs is truthful. *Yount*, 879 S.W.2d at

---

[9] Both parties had indicated to the trial court that the evidence did not constitute "bad acts." Appellant was fearful the State would later turn the evidence into "bad acts."

14

711; *Vasquez*, 975 S.W.2d at 417; *see also Gonzales v. State*, 4 S.W.3d 406, 417. (Tex. App.—Waco 1999, no pet.).

Appellant does not challenge Packwood's qualifications as an expert but claims that the State crossed the line by eliciting, over objection, testimony that S.S. told Packwood the truth about the sexual abuse. Packwood testified that she has a master's degree in social work, is licensed by the State as a psychotherapist, has been in practice for nineteen years, and has seen over a thousand children in her practice, many of whom have been sexually abused. Packwood reported that S.S.'s mother made an appointment for him in December 1998 and that she worked with him until August 1999. She related that S.S. did not inform her of any sexual abuse for five months after she began seeing him in her role as a clinical social worker, assessing and treating S.S.'s depression. Packwood testified that a delayed outcry is a part of child abuse syndrome, especially in young teenage boys who are reluctant, embarrassed, and fearful that they will not be believed. She placed S.S. in this group. Thereafter, Packwood's interrogation became lengthy, repetitious, and objection-laden.

Assuming, as appellant claims, that the State's interrogation of Packwood crossed the line and that Packwood testified directly as to S.S.'s truthfulness concerning the accusations, we observe that not all the claimed errors were preserved for review. There was no objection, or no *timely* objection, to some of the testimony cited by appellant. Nothing was preserved for review as to that testimony. *See* Tex. R. App. 31.1. To preserve error for review, a timely and specific objection must be made and followed by an adverse ruling. *Id.*; *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991). A party must object every time allegedly inadmissible testimony is offered

15

in order to preserve error. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991);[10] *Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984); *Scaggs v. State*, 18 S.W.3d 277, 291 (Tex. App.—Austin 2000, pet. ref'd). Objections made after questions are asked and answered do not preserve error. *Russell v. State*, 904 S.W.2d 191, 196-97 (Tex. App.—Amarillo 1995, pet. ref'd). As to some of the other testimony complained of by appellant, the only objection was that the question was leading. Complaints on appeal must comport with the trial objections or nothing is presented for review. *Fuller v. State*, 827 S.W.2d 919, 928 (Tex. Crim. App. 1992); *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990); *Carroll v. State*, 911 S.W.2d 210, 218 n.3 (Tex. App.—Austin 1995, no pet.).

There was some testimony to which appellant timely objected on the ground now urged and secured an adverse ruling. The improper admission of evidence is not reversible error when substantially the same facts are proven by unobjected-to testimony. *Anderson v. State*, 717 S.W.2d 622, 626-27 (Tex. Crim. App. 1986); *Miranda v. State*, 813 S.W.2d 724, 739 (Tex. App.—San Antonio 1991, pet. ref'd). Overruling an objection to evidence will not generally result in reversal where other evidence of that same fact was received without objection, either before or after the complained-of ruling, regardless of whether the other evidence was introduced by the defendant or the State. *See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (citing *Rogers v. State*, 853 S.W.2d 29, 35 (Tex. Crim. App. 1993); *Stoker v. State*, 788 S.W.2d 1, 12 (Tex. Crim. App. 1989)). Point of error two is overruled.[11]

---

[10] The two exceptions mentioned in *Ethington* are not here present.

[11] The State claims that appellant was the first to *directly* inquire into S.S.'s truthfulness during cross-examination of Packwood. There can be no question that appellant fully explored the

16

## Exclusion of Psychiatric Report

In his third point of error, appellant urges that the "trial court erred when it excluded the psychiatric report of the child conducted by Dr. Dybell."

Appellant attempted to introduce a "psychological evaluation" of the complaining witness made by Dr. Elizabeth Dybell in December 1997 and January 1998. Appellant first attempted to introduce the evaluation through S.S.'s mother, St. Germaine, and then through Carol Wills, the principal of the public school S.S. attended. The State's hearsay objections were sustained. Appellant was unable to convince the trial court of the applicability of the hearsay exceptions that he urged. The report was offered but never admitted into evidence. Appellant did not perfect a bill of exception or make an offer of proof. *See* Tex. R. Evid. 103(a)(2).

> To preserve error in the exclusion of evidence, Rule 103(a)(2), like the common law, requires that the substance of the evidence be shown by offer of proof . . . . Texas courts have consistently held that error in the exclusion of evidence may not be urged unless the proponent perfected an offer of proof or bill of exception.

Steven Goode, Olin Guy Wellborn III & M. Michael Sharlot, *Guide to the Rules of Evidence: Civil and Criminal*, § 103.3 at 21 (Texas Practice 2d ed.1993).

In the absence of a bill of exception or offer of proof, we have no basis for reviewing the contention that the trial court erred in excluding the evidence in question. *See Stewart v. State*, 686 S.W.2d 118, 122 (Tex. Crim. App. 1984). Appellant has not met his burden of showing the

issue. On cross-examination, Packwood stated that her job was to determine the treatment the child needed and was not to determine if the allegations were "true or not." Appellant made use of this testimony in his jury argument.

17

substance of the excluded evidence. *Kapuscinski v. State*, 878 S.W.2d 248, 249 (Tex. App.—San Antonio 1994, pet. ref'd). No error has been preserved. *Howard v. State*, 962 S.W.2d 119, 122 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd). The third point of error is overruled.

## Factual Sufficiency

In point of error four, appellant contends that the "evidence is factually insufficient to prove Jonathan Irving Hitt sexually abused [S.S.]." Appellant does not distinguish between the eight counts for which he was convicted in making this broad contention.

A factual sufficiency review begins with the presumption that the evidence supporting the judgment is legally sufficient. *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). Appellant does not challenge the legal sufficiency of the evidence. In a factual sufficiency review, we view the evidence without employing the prism of "in the light most favorable to the verdict." *Id.* at 129. We consider *all* of the evidence impartially, comparing evidence that tends to prove the existence of a disputed fact with evidence that tends to disprove that fact. *See Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). Under the *Clewis* standard of review, the verdict or judgment may be set aside only when it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Clewis*, 922 S.W.2d at 129. Of course, the trier of fact is the sole judge of the weight and credibility of the testimony. *Santellan*, 939 S.W.2d at 164.

Recently, the Court of Criminal Appeals noted that it was unclear whether *Clewis* had adopted both civil factual sufficiency review standards for criminal cases. *Johnson v. State*, 23 S.W.3d 1, 10 (Tex. Crim. App. 2000). The Court proceeded to adopt both formulations used in

civil cases, *viz*: that evidence can be factually insufficient if (1) it is so weak as to be clearly wrong and manifestly unjust or (2) the adverse finding is against the great weight and preponderance of the available evidence. *Id*. at 11. A judgment of conviction must be reversed and the cause remanded for a new trial if a neutral review of all the evidence, both for and against the finding of guilt, demonstrates that proof of the defendant's guilt is so obviously weak that it undermines confidence in the jury's verdict, or is greatly outweighed by contrary proof. *Id*.; *see Weatherred v. State*, 35 S.W.3d 304, 308 (Tex. App.—Beaumont 2001, pet. filed).

In the instant case, S.S. and appellant directly contradicted each other from the witness stand. There was evidence circumstantially supporting S.S. and contrary evidence circumstantially supporting the defense. It was for the jury as fact-finder to resolve any conflicts or inconsistencies in the evidence. *Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982). The fact-finder was also the judge of the credibility of the witnesses and could "believe all, some, or none of the testimony." *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

Appellant urges that *Johnson* distinguished *Cain v. State*, 958 S.W.2d 404 (Tex. Crim. App. 1997), and that under *Johnson* absolute deference to the fact-finder is not the standard. *See Johnson*, 23 S.W.3d at 8-9. "The degree of deference a reviewing court provides must be proportionate with the facts it can accurately glean from the trial record." *Id*. at 8. The *Johnson* opinion added, however:

> Unless the available record clearly reveals a different result is appropriate, an appellate court must defer to the jury's determination concerning what weight to give contradictory testimonial evidence because resolution often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered. This evidence is then accorded the appropriate

19

consideration by the reviewing court in the context of its overall analysis of the relevant evidence.

*Id.* at 8-9.

In arguing that the evidence was factually insufficient, appellant contends S.S. gave conflicting estimates as to the number of times he was sexually abused. Appellant argues that "it is doubtful this testimony can rise to any evidence at all." Appellant further urges that the outcry statement "was no more than the end product of consistent questioning" by S.S.'s mother and "was further exacerbated by techniques used by the social worker. The combination of these techniques helps in large part to explain the strong degree of vacillation" by S.S. Appellant refers to record evidence showing that St. Germaine repeatedly asked S.S. questions, and that Susan Packwood, the social worker, indicated that she would change her opinion if S.S. displayed the same behavior characteristics before he went to the monastery. Appellant claims that S.S. "had a reputation as being a person who had a loose connection with the truth." He argues that the "State wanted to avoid the issue of whether this child was actually abused" and relied on Belcher and Martinez to testify to extraneous matters that happened years before the alleged abuse. To support this claim, appellant sets out in his brief the opening statement of the prosecution at the guilt-innocence stage of the trial which, of course, is not evidence.

We have performed our own neutral review of all the evidence. We are permitted to disagree with the fact-finder only if all the evidence demonstrates that appellant's guilt was so obviously weak as to undermine our confidence in the verdict rendered, or if the State's case,

20

although adequate taken alone, is greatly outweighed by the contrary proof. We find neither formulation present. The fourth point of error is overruled.

The judgment is affirmed.

_____
John F. Onion, Jr., Justice

Before Justices B. A. Smith, Yeakel and Onion*

Affirmed

Filed:  July 26, 2001

Publish

---

*  Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).