

# NUMBER 13-21-00329-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

DONNA BERNICE REESE,                                              Appellant,

v.

THE STATE OF TEXAS,                                              Appellee.

## On appeal from the 277th District Court of Williamson County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Silva
Memorandum Opinion by Justice Longoria**

Appellant Donna Bernice Reese was found guilty by a jury of sexual assault of a child, a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(C). The jury sentenced Reese to fifteen years' confinement in the Correctional Institutions Division of the Texas Department of Criminal Justice. By three issues, Reese argues the trial court

abused its discretion when it: (1) denied her motion for mistrial; (2) allowed extraneous offense testimony over her Rule 403 objection; and (3) denied her request for a contemporaneous limiting instruction. We affirm.[1]

## I.  BACKGROUND

On September 20, 2018, Reese was indicted for committing the offense of sexual assault of a child. *See id.* The indictment was amended on January 9, 2020. The amended indictment specifically alleged that

> [O]n or about the 1st day of January, 1997, in Williamson County, Texas, . . . Reese . . .did, intentionally and knowingly cause the sexual organ of [M.R.[2]], a child who was younger than 17 years of age to contact and penetrate the sexual organ of . . . Reese.

On January 30, 1983, Reese gave birth to her only son, M.R, when she was fifteen years old. At the time of trial, M.R. was thirty-eight years old. M.R. testified that Reese physically and sexually abused him for many years when he was between five and sixteen years old. M.R. explained that most of the sexual abuse took place at his grandparents' home in Taylor, Texas—where Reese and M.R. lived and shared a room together. M.R. testified that the first incident of sexual abuse occurred in their bedroom when he was five. Reese told M.R. to take a nap. M.R. then lay down in bed on his side, and Reese lay down in front of him on her side. Reese then pulled down her pants and his pants and placed his penis "in her butt" and "pushed her body into" M.R.'s body. Reese asked him

---

[1] This case is before this Court on transfer from the Third Court of Appeals in Austin pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

[2] We use initials to protect the names of complainants. *See Salazar v. State*, 562 S.W.3d 61, 63 n.1 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.) (noting that the comment to Texas Rule of Appellate Procedure 9.8 does "not limit an appellate court's authority to disguise parties' identities in appropriate circumstances . . .").

if "it felt good" and told him he could not tell anyone. Reese told him that if he told anyone, some people would take him away.

M.R. further testified that, when he was about eleven years old, he was instructed by Reese to lock the doors to their bedroom and lie in bed with her, and he obliged. Reese then pulled his pants down and massaged his penis with her hands. M.R. "became erect" for the first time and Reese told him that he had to wear a condom for them to do "what [they] always do." Reese instructed M.R. to "get money off of the dresser and go to the store next door to buy condoms." M.R. then walked to a store that was next to his grandparents' house and bought condoms, despite not knowing what condoms were used for. After M.R. returned home and locked the bedroom door, Reese took his clothes off, touched his penis until he was erect, and placed the condom on M.R.'s penis. Reese then told him to get on top of her; when M.R. did not, Reese pulled him to get him on top of her and put his penis inside her vagina.

According to M.R.'s testimony, when he was thirteen or fourteen years old, he and Reese visited some friends—Renee and Renee's son—in Giddings, Texas. Once Renee and Renee's son left the home to the grocery store, Reese asked M.R. to take a "nap." According to M.R., "the word 'nap' meant I needed to do whatever she asked me." M.R. then stated that Reese put a condom on him and made him have sex with her on Renee's bed. M.R. said this particular incident stood out because it was the first time that the sexual abuse happened outside of the house he grew up in. M.R. testified, "I didn't think it could happen outside of the house. I thought everywhere else was safe. . . . [Reese] was in Renee's bed, and I just remember being upset that I had to do it. I remember being

3

mad that I had to do it."

M.R. also testified that he suffered other incidents of sexual abuse. When asked how frequent the sexual abuse occurred between when he was five and sixteen years old, M.R. replied: "Sometimes every other week, sometimes once a month; if my grandparents were gone, if the house—if it was [Reese] and I alone; that continued that way, that pattern, and even when they were home, it would continue; so several . . . times a month." M.R. was fourteen years old in February 1997. M.R. specifically testified that when he was fourteen, Reese placed his penis into her vagina.

In March 2016, in a post on Facebook, M.R. wrote: "When the person who brings you into the world tells you that you aren't valuable, you start to believe it." Minutes later, D.H., an acquaintance of M.R., messaged M.R. on Facebook, and she and M.R. exchanged phone numbers. D.H. called M.R. on the phone, and after their conversation, M.R. "was in shock."[3] On the next day, M.R. formally made a police report at Taylor Police Department (Taylor P.D.) and was later interviewed by Taylor P.D. Detective Aaron Koch.

Following additional testimony from other witnesses, the jury found Reese guilty of sexual assault of a child. *See id.* The jury sentenced Reese to fifteen years' confinement. This appeal followed.

## II.　MISTRIAL

In her first issue, Reese claims the trial court abused its discretion when it denied her motion for mistrial.

---

[3] We note that M.R. did not testify regarding the contents of the conversation with D.H.

## A.    Standard of Review & Applicable Law

"A trial court's denial of a mistrial is reviewed for an abuse of discretion." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) (citing *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). "An appellate court views the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling." *Id.* (citing *Wead v. State,* 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)). "The ruling must be upheld if it was within the zone of reasonable disagreement." *Id.* (citing *Wead*, 129 S.W3d at 129).

"A mistrial is an appropriate remedy in 'extreme circumstances' for a narrow class of highly prejudicial and incurable errors." *Id.* (first citing *Hawkins v. State,* 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); and then citing *Wood v. State,* 18 S.W.3d 642, 648 (Tex. Crim. App. 2000)). "A mistrial halts trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Id.* (citing *Ladd*, 3 S.W.3d at 567). "Whether an error requires a mistrial must be determined by the particular facts of the case." *Id.* (citing *Ladd*, 3 S.W.3d at 567). Evaluating whether a mistrial should have been granted is similar to performing a harm analysis in that it involves most, if not all, of the same considerations. *Archie v. State*, 221 S.W.3d 695, 700 (Tex. Crim. App. 2007). The factors to consider in a mistrial analysis include "(1) the severity of the misconduct ([i.e.,] the magnitude of the prejudicial effect); (2) the measures adopted to cure the misconduct ([i.e.,] any instructions or options the trial court gave in mitigation); and (3) the certainty of conviction absent the misconduct ([i.e.,] the strength of the

evidence supporting the conviction). *Id.* (quoting *Ramon v. State*, 159 S.W.3d 927, 929 (Tex. Crim. App. 2004)).

The court of criminal appeals has recognized that "[o]rdinarily, a prompt instruction to disregard will cure error associated with an improper question and answer." *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). Thus, a trial court must grant a mistrial only when an improper question or answer is "clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors." *Wood*, 18 S.W.3d at 648 (quoting *Ladd*, 3 S.W.3d at 567).

## B.    Discussion

During trial, the State asked Detective Koch whether he believed the allegations M.R. made about Reese during their interview. After Detective Koch responded that he believed M.R., Reese objected, and the trial court sustained the objection. Reese then requested the trial court to instruct the jury to disregard Detective Koch's answer. The trial court granted the request and instructed the jury to "[d]isregard the last answer about whether or not [Detective Koch] believed [M.R.]." Reese then moved for mistrial, which the trial court denied.

In her brief, Reese argues that "[Detective] Koch's testimony and opinion sent a powerful message to the jury that they could set aside any . . . lingering doubts about [Reese's] guilt." Reese further argues that "[Detective] Koch[']s testimony was so prejudicial that its harmful impact could not be cured by the trial court's instruction to disregard." Under the circumstances presented by this sexual-abuse case, we conclude the trial court did not abuse its discretion by denying Reese's motion for mistrial.

6

With respect to severity of the misconduct, Koch's statement was improper insofar as it improperly bolstered the believability of M.R. but was not highly prejudicial. *See Sandoval v. State*, 409 S.W.3d 259, 292 (Tex. App.—Austin 2013, no pet.) ("[N]o witness, expert or lay, is competent to voice an opinion about the guilt or innocence of a defendant.") (cleaned up); *see also Santamaria v. State*, No. 01-09-00433-CR, 2011 WL 2165153, *4 (Tex. App.—Houston [1st Dist.], Jan. 20, 2011, pet ref'd) (mem. op., not designated for publication) (holding that officer's testimony that he found the complainant to be credible was inappropriate but did not constitute serious misconduct). We note that the jury heard M.R. describe the sexual assault in detail. While inappropriate, Koch's testimony was not of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors. *See Wood*, 18 S.W.3d at 648; *see also Sandoval*, 409 S.W.3d at 295 ("Given that [the detective] forwarded this case to the district attorney's office for prosecution after his investigation, one could logically assume that he found [the victim] credible, her allegations truthful, and believed appellant was guilty of committing this sexual assault.").

Second, the trial court sustained Reese's objection to Koch's testimony and promptly instructed the jury to disregard it upon Reese's request. We generally presume that the jury follows the trial court's instructions in the manner presented. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009); *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). The presumption is refutable only by evidence that the jury failed to follow the trial court's instructions. *See Thrift,* 176 S.W.3d at 224. This is because "the degree of harm demonstrated by an appellant must be actual, not merely theoretical."

*Bradshaw v. State*, 244 S.W.3d 490, 497–98 (Tex. App.—Texarkana 2007, pet. ref'd). Nothing in this record suggests that the trial court's instruction to disregard was not effective in curing any prejudice. *See Flores v. State*, 513 S.W.3d 146, 167 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd.) (holding the record did not show that the trial court's instruction to disregard a psychologist's testimony that a sexual abuse victim was credible was ineffective in curing any prejudice).

Finally, we examine the certainty of the conviction absent the misconduct. The testimony of a victim of a sexual offense alone is sufficient to support a conviction for sexual assault of a child. *See* TEX. CODE CRIM. PROC. ANN. art 38.07(a), (b)(1) (providing that the uncorroborated testimony of victim is sufficient to support conviction for sexual offense if victim was seventeen years of age or younger at the time of the offense); *see also Chasco v. State*, 568 S.W.3d 254, 258 (Tex. App.—Amarillo 2019, pet. ref'd.). Here, the jury heard M.R. testify in detail about several years in which he endured sexual abuse, including incidences where Reese caused M.R.'s penis to penetrate Reese's vagina. Furthermore, Detective Koch did not testify about any specific statements M.R. made during their interview, and the State did not highlight any of Detective Koch's testimony during its closing arguments. Therefore, it is unlikely that the jury's decision to convict was influenced by Detective Koch's testimony that he believed M.R. to be credible. *See Flores*, 513 S.W.3d at 167 ("It is unlikely that the jury's decision to convict was influenced by the pediatrician's testimony that he believed complainant's story to be credible—the same story the jury heard from complainant.").

8

After balancing all of the factors, we hold that the trial court did not abuse its discretion in denying Reese's motion for mistrial. *See Ocon*, 284 S.W.3d *at* 884. While we agree that Detective Koch's statement was inappropriate, we cannot conclude that the statement, standing alone, caused the kind of incurable prejudice that could not be adequately addressed by the trial court's prompt instruction to the jury to disregard. The record does not suggest that residual prejudice remained after the trial court promptly instructed the jury to disregard Detective Koch's testimony. *See id.* at 884–85. ("Because it is an extreme remedy, a mistrial should be granted 'only when residual prejudice remains' after less drastic alternatives are explored."). Reese's first issue is overruled.

### III. EXTRANEOUS OFFENSE TESTIMONY

In her second issue, Reese claims the trial court abused its discretion when it admitted extraneous offense testimony from D.H. over her Rule 403 objection.

Prior to trial, the State provided written notice to Reese of its intent to introduce extraneous offense evidence under Article 38.37, including, among other things, evidence that Reese had committed the offenses of indecency with a child by sexual contact and sexual assault of a child against D.H. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, §§ 2, 2–a, 3; *see also* TEX. PENAL CODE ANN. §§ 21.11, 22.011(a)(2). Evidence of the extraneous offenses was presented to the trial court at a hearing conducted outside the presence of the jury, as required by § 2–a(2). *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2–a. At the hearing, D.H. testified that Reese had performed oral sex on her when she was a child and that Reese had digitally penetrated her vagina and anus. Among other things, Reese raised a Rule 403 objection arguing unfair-prejudice and confusion of the

9

issues. At the conclusion of the hearing, the trial court determined that the evidence relating to the sexual abuse of D.H. was adequate to support a finding by the jury, beyond a reasonable doubt, that Reese committed the extraneous offenses. *See id.* § 2–a(1).

In front of the jury, D.H. testified that she lived near Reese in Taylor as a child and was sexually abused by Reese when she was about seven or eight years old. Before M.R. was born, Reese took D.H. for rides in Reese's vehicle and would touch D.H. between her legs during the rides. Reese would always touch D.H. over her clothes— Reese "would have her hand . . . on [D.H.'s] upper thigh . . . and . . . [Reese's hand] would move up." Reese also "open-mouth" and "French" kissed D.H. Reese used her hands to touch D.H. over her panties. D.H. described that Reese would "dry hump" her:

> [Reese] would get on top of me, and it was like we were having sex, you know, and I remember . . . vividly the weight, the heaviness. I can remember her smell. I can remember the way she would talk to me in my ear. (Crying) And she would tell me . . . that what we were doing was nothing, she would tell me that I was nothing, my body was nothing, and that's what I grew to believe.

The sexual abuse escalated after M.R. was born. Reese performed oral sex and digitally penetrated D.H. in a bedroom in the Reese home while baby M.R. was present, playing with toys. D.H. admitted to not knowing where everybody else who lived in the house was during the sexual abuse. D.H. also testified that one time Reese used her finger to penetrate D.H.'s anus, that it hurt, and Reese was apologetic about it. D.H. moved out of the house near Reese when she was nine or ten years old, during summer in between her fourth and fifth grade school year. According to D.H., the last time Reese touched her was just prior to the time she moved.

10

D.H. also explained that in 2016, she and M.R. were friends on Facebook. After M.R. made a Facebook post, D.H. left M.R. an inbox message. After several private messages between each other, D.H. and M.R. had a conversation over the phone.[4] Within days after that phone conversation, D.H. and M.R. went to Taylor P.D. D.H. provided a statement to Taylor P.D. regarding what Reese had done to her.

## A.     Standard of Review & Applicable Law

"We review a trial judge's decision on the admissibility of evidence under an abuse of discretion standard." *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016) (citing *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011)). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable." *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Moreover, the ruling will be upheld provided that the trial court's decision "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). An appellate court reviews the trial court's ruling in light of the record before the court "at the time the ruling was made." *Khoshayand v. State*, 179 S.W.3d 779, 784 (Tex. App.—Dallas 2005, no pet.) (citing *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002)).

Article 38.37 permits the introduction of evidence of extraneous child sexual offenses in certain types of sexual abuse cases, including this one. *See* TEX. CODE CRIM.

---

[4] D.H. did not testify as to the contents of the conversation.

PROC. ANN. art. 38.37, § 2.

Rule 403 authorizes a trial court to exclude relevant evidence if its probative value is substantially outweighed by, among other things, a danger of unfair prejudice and confusion of the issues. TEX. R. EVID. 403. Courts should balance the following factors under a Rule 403 analysis: "(1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence." *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012) (citing *Montgomery v. State*, 810 S.W.2d 372, 389–90 (Tex. Crim. App. 1990)). Rule 403 does not require that the balancing test be performed on the record. *Belcher v. State*, 474 S.W.3d 840, 848 (Tex. App.—Tyler 2015, no pet.) (citing *Hitt v. State*, 53 S.W.3d 697, 706 (Tex. App.—Austin 2001, pet ref'd)). In overruling a Rule 403 objection, the trial court is assumed to have performed a Rule 403 balancing test and determined the evidence was admissible. *Id.* (citing *Hitt*, 53 S.W.3d at 706). There is a presumption that relevant evidence is more probative than prejudicial. *Id.* (citing *Santellan v. State*, 939 S.W.3d 155, 169 (Tex. Crim. App. 1997)).

**B.    Discussion**

Reese did not complain in the trial court and does not argue on appeal that the evidence was irrelevant or that the trial court failed to comply with Article 38.37, § 2-a. Rather, Reese argued at trial and now contends on appeal that the evidence violated Rule 403 on unfair prejudice and confusion of the issues grounds. *See* TEX. R. EVID. 403; *see also Gomez v. State*, No. 13-17-00180-CR, 2019 WL 470933, at *4 (Tex. App.— Corpus Christi–Edinburg Feb. 7, 2019, pet. ref'd) (mem. op., not designated for

publication). Assuming without deciding that Reese's 403 objections were preserved, we hold that Reese was not harmed by admission of D.H.'s extraneous offense testimony.

### 1.    Probative Value of Similar Crimes

The probative value factor of a Rule 403 analysis requires us to consider the strength of the extraneous offense evidence to make a fact of consequence more or less probable. *See Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010). D.H.'s testimony served the purpose of Article 38.37 in this type of offense: to permit the jury to consider the character of Reese and demonstrate that she had performed similar acts on a similarly situated person. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b); *see also Gaytan v. State*, 331 S.W.3d 218, 228 (Tex. App.—Austin 2011, pet. ref'd) (holding that evidence that defendant had sexually abused two other children was "straightforward and directly relevant to the only issue in the case, namely whether [the defendant] abused [the complainant]"). D.H. testified that as a child, she was present in the Reese home at times, giving Reese access to perform the alleged acts. Similarly, Reese was alleged to have molested M.R. in the same location, the Reese home.

When determining the probative value of past criminal behavior, courts should consider "the closeness in time between the extraneous offense and the charged offense." *Kiser v. State*, 893 S.W.2d 277, 281 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd). Here, D.H. testified that Reese molested her when she was between seven and ten years old—around 1984 to 1987. Reese was alleged to have molested M.R. when he was between five and sixteen years old—around 1988 to 1999. A time period of one to four years is not so remote as to erode the probative value of the extraneous offense

13

evidence. *See Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). This factor weighs in favor of admission.

### 2. State's Need for Evidence

Without D.H.'s testimony, the case would have basically come down to M.R.'s word against Reese's. *See Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) ("Rule 403 . . . should be used sparingly, especially in 'he said, she said' sexual-molestation cases that must be resolved solely on the basis of the testimony of the complainant and the defendant."). There was no physical evidence or other eyewitness testimony supporting M.R.'s allegations. *See Gaytan*, 331 S.W.3d at 227 (providing that the lack of physical evidence may be a basis for needing evidence of extraneous offenses). In addition, D.H.'s testimony tended to rebut one of Reese's defensive theories—that she could not have performed any of the alleged acts unnoticed by anyone else who lived in the Reese home. *See, e.g., Buxton v. State*, 526 S.W.3d 666, 690–91 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (holding that inherent probative force of extraneous offense evidence was considerable because it tended to contradict defendant's theory that incident with complainant could not have occurred at the location alleged). This factor weighs in favor of admission.

### 3. Potential to Impress the Jury in Some Irrational but Indelible Way

The acts recounted by D.H. could by their nature "tend to inflame" but Reese had the opportunity to cross-examine D.H. regarding: the Reese home and who lived there; the circumstances in which D.H. was present in the Reese home; the particularities of the statement of D.H. provided to Taylor P.D.; and the discrepancies between D.H.'s

testimony and the statement she provided to Taylor P.D.[5] The jury was allowed to determine D.H.'s credibility following her direct and cross-examination testimony. And the jury was permitted to consider the testimony "for any bearing [it had] on relevant matters," including on Reese's character and acts performed in conformity with her character. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b). To the extent the testimony tended to suggest a decision on an improper basis, this potential was somewhat ameliorated by the fact that the testimony from D.H. concerning sexual misconduct "discussed actions that were no more serious than the allegations forming the basis for the indictment." *Robisheaux v. State*, 483 S.W.3d 205, 220 (Tex. Crim. App. 2016); *see also Belcher*, 474 S.W.3d at 848 (noting that extraneous offense was "more repugnant and inflammatory than the offense alleged against [the complainant]," but still holding that trial court did not abuse its discretion by ruling that Rule 403 was not violated). D.H.'s testimony was also not confusing or technical in nature. *See id.*

Furthermore, the trial court included the following instruction in the jury charge:

You are further instructed that if there is any evidence before you in this case regarding [Reese] committing other crimes, against a child under seventeen years of age, other than the complainant listed in the indictment, you cannot consider such evidence for any purpose unless you find and believe beyond a reasonable doubt that [Reese] committed such other crimes, if any, and even then you may only consider the same in

---

[5] Reese spends the majority of her argument pointing out portions of D.H.'s testimony in which D.H. was crying, explaining the guilt she felt for not speaking up and possibly "saving" M.R., referring to Reese as a monster, and implying that Reese was still committing acts of sexual abuse. We first note that the complained-of testimony was not before the trial court at the time it made its ruling admitting D.H.'s testimony over Reese's 403 objection during the Article 38.37 hearing. *See Khoshayand v. State*, 179 S.W.3d 779, 784 (Tex. App.—Dallas 2005, no pet.) (holding that the trial court's ruling on the admissibility of evidence is reviewed in light of the record before the court "at the time the ruling was made"). We also note that Reese did not object to the complained-of testimony. Reese further points to D.H.'s testimony where she addressed Reese directly, stating "You knew if I went and told my momma what you did to me, you knew my momma would have knocked your head off. You knew that." However, the record demonstrates that Reese objected, and the trial court sustained the objection.

15

determining its bearing on relevant matters, including the character of [Reese] and acts, if any, performed in conformity with the character of [Reese], and for no other purpose.

In the absence of any indication in the record to the contrary, we presume the jury obeyed these instructions. *See Gamboa*, 296 S.W.3d at 580; *Thrift*, 176 S.W.3d at 224. This factor weighs in favor of admission.

### 4.      Time Needed to Develop Evidence

D.H. was on the stand for a relatively brief period of time. Her testimony occupies only fifty-one pages of a reporter's record containing nearly 500 pages of witness testimony during the guilt-innocence phase of Reese's trial. There is no indication that the amount of time needed to develop D.H.'s testimony prevented the jury from assessing the indicted offense. Nor is there evidence that D.H.'s testimony confused or distracted the jury from assessing the indicted offense. *See Gigliobianco*, 210 S.W.3d at 641 ("Evidence that consumes an inordinate amount of time to present or answer, for example, might tend to confuse or distract the jury from the main issues."). This factor weighs in favor of admission.

### 5.      Conclusion of Balancing Test

Applying the applicable standard of review, we conclude that the trial court did not abuse its discretion in determining that a danger of unfair prejudice or confusion of the issues did not substantially outweigh the probative value of the extraneous offense evidence regarding D.H. We overrule Reese's second issue.

### IV.      CONTEMPORANEOUS LIMITING INSTRUCTION

In her final issue, Reese claims the trial court abused its discretion in denying her

request that the jury be given a contemporaneous limiting instruction regarding D.H.'s extraneous offense testimony discussed *supra*.

## A.    Standard of Review & Applicable Law

Upon request, the trial court must give a limiting instruction to the jury at the time that extraneous offense evidence is offered. *See* TEX. R. EVID. 105(a); *see also Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007). When evidence is admitted for a limited purpose, the trial court must, upon request, provide a midtrial limiting instruction, as failing to provide the instruction may improperly result in the jury forming a negative inference about the defendant. *Jackson v. State*, 992 S.W.2d 469, 477 (Tex. Crim. App. 1999). This improper inference, once formed, cannot easily be cured by an instruction in the jury charge. *Id.*

If the trial court errs in failing to give a limiting instruction when required, the appellate court shall determine whether the error is harmless. *See Jones v. State*, 944 S.W.2d 642, 653 (Tex. Crim. App. 1996) (holding that harmless-error analysis is applicable to trial court's failure to give Texas Rule of Evidence 105(a) limiting instruction upon admission of extraneous offense evidence). Because the failure to give a timely Rule 105(a) limiting instruction is non-constitutional error, Texas Rule of Appellate Procedure 44.2(b) applies. TEX. R. APP. P. 44.2(b); *Rankin v. State*, 995 S.W.2d 210, 215 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). When applying Rule 44.2(b), we disregard the error unless it affected appellant's substantial rights. TEX. R. APP. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim.

17

App. 1997). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001) (quoting *Reese v. State*, 33 S.W.3d 238, 243 (Tex. Crim. App. 2000)); *see also Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error, and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We also may consider the jury instructions, the State's theory and any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire, if applicable. *Id.* at 355–56.

**B.     Discussion**

Prior to the subject testimony, at a bench conference outside the presence of the jury during trial, Reese timely requested the following:

> We would ask that you instruct the jury that they cannot consider this evidence unless they believe it beyond a reasonable doubt, cannot consider it for any purpose. That's specifically from Article 38.37, Section 2. And number two is they cannot consider this evidence to determine the truth of the . . . allegations against Ms. Reese.

The trial court responded that it would include a limiting instruction in the jury charge. The following colloquy occurred:

> [Reese]:                    Okay. But you're not going to [instruct the jury]
>                             at this time?

18

| [The State]: | That would be a comment on the weight of the evidence. |
| [The Court]: | Yeah, I'm going to do it at the charge. |
| [Reese]: | That's fine. So my request for those two is denied? |
| [The Court]: | Overruled. |

We first conclude that the trial court did not err in denying Reese's request for an instruction that the jury could not consider D.H.'s extraneous offense testimony "unless they believe it beyond a reasonable doubt, cannot consider it for any purpose." Such an instruction refers to the State's burden of proof, for which a contemporaneous instruction is not required. *See Jackson*, 992 S.W.2d at 477 (stating that the "rationale for giving a contemporaneous instruction [when admitting evidence of extraneous offenses] does not apply to burden of proof issues"); *see also Delgado*, 235 S.W.3d at 251 (stating that "even when a party properly requests a limiting instruction at the time the evidence is first offered, the trial judge need not give an instruction on the burden of proof at that time").

However, assuming without deciding that the trial court erred in failing to provide a *proper* contemporaneous limiting instruction, Reese's argument does not survive harm analysis. *See* TEX. R. EVID. 105(a); *Delgado*, 235 S.W.3d at 251; *see also* TEX. R. APP. P. 44.2(b); *Jones*, 944 S.W.2d at 653.

Here, the record reflects ample evidence of Reese's guilt because M.R.'s testimony about Reese's actions is sufficient to support the jury's verdict as to the charged offense. *See Motilla*, 78 S.W.3d at 355. Extraneous offense evidence is generally inadmissible at trial because evidence of character or propensity "is said to weigh too

19

much with the jury." *See Robbins v. State*, 88 S.W.3d 256, 262 (Tex. Crim. App. 2002) (quoting *Michelson v. United States*, 335 U.S. 469, 476 (1948)). But that concern does not apply to cases like this, where the law specifically allows the jury to consider extraneous offense evidence for the purpose of character conformity. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37 § 2(b). The charge allowed the jury to consider extraneous offense evidence involving D.H. for that purpose, and its limiting instruction further reduced the risk that the jury might misuse the evidence during their deliberations. Moreover, as we concluded in discussing Reese's second issue, the extraneous offense evidence was "no more serious than the allegations forming the basis for the indictment," minimizing its prejudicial effect even in the absence of a contemporaneous limiting instruction. *See Robisheaux*, 483 S.W.3d at 220; *see also Belcher*, 474 S.W.3d at 848.

Having reviewed the record as a whole, we also conclude that the State did not refer to D.H.'s extraneous offense testimony during its closing argument in an objectionable manner to improperly bolster the credibility of D.H. The State did not rely heavily on the extraneous acts and explained the charge's limiting instruction in connection to D.H.'s testimony. Moreover, the State's closing argument focused on M.R.'s testimony, addressed Reese's defensive theories, and expressed to the jury that "at the end of the day, this[ case] comes down to who do you believe." *See Balderas v. State*, 517 S.W.3d 756, 766 (Tex. Crim. App. 2016) ("The jury is the sole judge of the credibility and weight to be attached to witness testimony.") (cleaned up); s*ee also* TEX. CODE CRIM. PROC. ANN. art. 36.13.

20

Reese points out that other courts evaluating harm resulting from the failure to give a contemporaneous limiting instruction have considered the time between admission of the extraneous offense evidence and the limiting instruction in the jury charge. *See Lemmons v. State,* 75 S.W.3d 513, 525 (Tex. App.—San Antonio 2002, pet. ref'd). (holding that, given the short time between introduction of extraneous offense evidence and reading of charge's limiting instruction—three or four hours—the trial court's error did not affect a substantial right); *Jones v. State*, 119 S.W.3d 412, 424 (Tex. App.—Fort Worth 2003, no pet.) (discussing that the complained-of testimony was presented towards the end of trial, and that there was a "relatively short interval" between the introduction of the evidence and the trial court's reading of limiting instructions in the court's charge). In this case, D.H. testified in the morning of August 30, 2021, and the jury was read the charge containing the limiting instruction in the early afternoon of September 1, 2021. Thus, the relevant time period here is two days. Reese does not cite any cases holding that a two-day period between admission of extraneous offense evidence and the limiting instruction in the jury charge affects an appellant's substantial rights, and we decline Reese's invitation to hold the same.

Based on our analysis of the record, we have fair assurance that the error did not influence the jury or had but a slight effect, and we conclude that any error by the trial court in failing to give a contemporaneous limiting instruction did not affect Reese's substantial rights. *See Solomon*, 49 S.W.3d at 365; *see also* TEX. R. APP. P. 44.2(b). Accordingly, we overrule Reese's final issue.

## V.    Conclusion

We affirm the judgment of the trial court.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
9th day of March, 2023.