

# NUMBER 13-22-00613-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ENEDEL BARRIOS A/K/A
ENEDEL BARRIOS-CATANO,                                              Appellant,

v.

THE STATE OF TEXAS,                                                   Appellee.

### On appeal from the 18th District Court
### of Johnson County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Tijerina
Memorandum Opinion by Chief Justice Contreras**

Appellant Enedel Barrios a/k/a Enedel Barrios-Catano was convicted of two counts

of sexual assault of a child and two counts of indecency with a child by sexual contact, all

second-degree felonies. *See* TEX. PENAL CODE ANN. §§ 21.11(d), 22.011(a)(2). The jury

assessed punishment at twenty years' imprisonment for the sexual assault counts, and

ten and fifteen years' imprisonment for the two indecency counts, respectively. The sentences were ordered to run concurrently. On appeal, Barrios raises six issues: (1–4) the evidence was legally insufficient to support conviction on each of the four counts; (5) the trial court erred by excluding evidence that the complainant "previously made false allegations of abuse"; and (6) the trial court erred by admitting evidence that Barrios "had sex with his [current] wife when she was 16 years old and he was married to her mother." We affirm.[1]

## I.    BACKGROUND

The indictment alleged that Barrios, on or about March 9, 2021, intentionally or knowingly: (1) caused the penetration of the sexual organ of Victoria Williams,[2] his fourteen-year-old granddaughter, with his sexual organ; (2) caused the penetration of Victoria's mouth with his sexual organ; (3) touched Victoria's genitals with the intent to arouse or gratify his sexual desire; and (4) touched Victoria's breast with the intent to arouse or gratify his sexual desire. *See id.* §§ 21.11(a)(1), 22.011(a)(2)(A), (a)(2)(B).

Trial testimony established that on March 10, 2021, when Victoria was in eighth grade, she made a report of abuse to a resource officer at her middle school in Burleson. Burleson Police Department detectives took Victoria to be interviewed at the Children's Advocacy Center (CAC) in Cleburne, and then to be examined by a sexual assault nurse examiner (SANE) at Cook Children's Medical Center in Fort Worth. At both the forensic

---

[1] This appeal was transferred from the Tenth Court of Appeals in Waco pursuant to an order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001.

[2] To protect the identity of the complainant, we refer to her by the pseudonym given to her in the indictment. *See* TEX. CONST. art. 1, § 30(a)(1) (providing that a crime victim has "the right to be treated . . . with respect for the victim's dignity and privacy throughout the criminal justice process").

interview and the SANE exam, Victoria reported that she had been sexually abused by Barrios the previous evening, while her grandmother Laura Barrios was at her aunt's house. The SANE nurse performed a physical examination which revealed petechiae, or broken blood vessels, around Victoria's breasts; and "redness and irritation," but no injury, around her genitals. The nurse collected oral, abdominal, breast, perianal, vulvar, and buccal swabs, which were sent to a lab for analysis. Police later executed a search warrant at the residence where Barrios, Laura, and Victoria lived, and they collected a quilt and some articles of clothing.

Initial forensic testing of the abdominal and breast swabs revealed the presence of genetic material from a foreign contributor, though the presence of semen was not confirmed. Police then arrested Barrios and obtained a DNA sample from him via buccal swab. After additional testing, Barrios could not be excluded as a contributor to the genetic material found on the abdominal and breast swabs. According to the analyst's report, assuming no identical twin, the data indicated "with a high degree of confidence" that Barrios was the source of the foreign DNA on the swabs.

Victoria testified at trial that, in March of 2021, she lived in a house in Burleson with her father Benjamin and her paternal grandparents, Barrios and Laura. She said she did not like living at that house because it was "infested with cockroaches and rats," "smelled really bad," and had a ceiling which "was only held up by planks of wood." One night in early March around 8:00 p.m., when her grandmother was out visiting her aunt, Barrios repeatedly asked Victoria to bring him beer while he was watching TV in his room. After the "second beer," around 8:30 p.m., Barrios kissed Victoria on the cheek "really close to [her] mouth." Later, he asked for another drink, and he kissed her on the cheek

3

again, but this time also put his tongue into her mouth. Victoria said Barrios then "put [her] onto the bed" and touched her on her breasts, both over and under her clothing. Victoria recalled that, after she brought Barrios another beer, he "kissed [her] with [his] tongue again" and he "began to suck [her] breasts." She said: "After that he continued to suck my breasts and then he got really close to my vaginal area with his fingers." Victoria testified that Barrios "put his finger in my vagina" and "put his penis in [my vagina] at least once or twice." She said he stopped only when he realized Laura was returning home. Victoria later stated that, on that same day, Barrios "made [her] put his penis in [her] mouth," though she could not recall whether that happened before or after the other abuse. She stated that, at the time of trial, she was living with her maternal grandmother.

Laura testified that she lives at the house in Burleson with Barrios, her husband; Benjamin, her son; and Virginia Ann Williams, her mother. When she first became romantically involved with Barrios in around 1987, she was sixteen years old and Barrios was twenty-four years old and was married to Virginia. Over defense counsel's objection, Laura said she had intercourse with Barrios, and became pregnant with Benjamin, when she was sixteen years old. She married Barrios shortly after Benjamin was born. Several years later, they had a daughter, Nicole.

According to Laura, Victoria came to live with her, Barrios, and Benjamin in 2012, and she continued to live there up until her outcry of abuse in March of 2021. In the evening of March 9, 2021, Laura left the house to pick up Nicole. When she returned at around 10:30 p.m., Barrios and Victoria were at the house. Laura said Victoria seemed "very okay" and "hunky-dory."

On cross-examination, Laura explained that, when she was at Nicole's house

4

earlier in the day, she and Nicole had a discussion in Victoria's presence about "Benjamin . . . terminating his parental rights" to Victoria. Laura said Victoria "did not want that."[3] Laura also agreed with defense counsel that, at the time she and Barrios began their sexual relationship, her mother "grant[ed her] the authority to conduct [her] life as an 18 years old, an adult" and gave her permission to marry Barrios, though there were no documents signed to that effect. Laura further stated that, since 2020, Barrios has not been able to have sexual relations with her due to the variety of prescribed medications he was taking.

Testifying for the defense, Benjamin stated he lived with Laura, Barrios, and Victoria from January to March 2021. He never saw his father commit any inappropriate conduct or make any inappropriate remarks to Victoria. Benjamin's girlfriend Melissa Weller testified that Victoria stayed with her and Benjamin at a hotel after the SANE exam. According to Weller, during a discussion with Victoria about why she had been returned to Benjamin's custody, Victoria repeatedly referred to Barrios as a "wetback," and she said that Barrios had touched her "[o]n the butt." On cross-examination, Weller agreed that Victoria was "angry" and "[a] little overwhelmed" at the time. Later, Weller stated that Victoria seemed "happy" and "joyful" on March 10 and 11, 2021.

Janice Wagner, an investigator with the Texas Department of Family and Protective Services (the Department), testified that Victoria accused Laura of "emotional abuse and physical abuse" in June of 2020, and Wagner was assigned to investigate the

---

[3] Nicole also testified that she and Laura had a conversation in Victoria's presence about "Benjamin terminating his parental rights." She said that, when the conversation started, Victoria's "face and demeanor" changed and she "started tearing up."

case.[4] After conducting various interviews, Wagner and her supervisor "ruled out" the allegations because they "did not meet the standard of physical abuse and emotional abuse."[5] However, the Department determined that the family should be provided family-based safety services because they "need[ed] some extra resources to keep the child safe."

Nicole's husband Jonathan testified that, at a picnic outside Barrios and Laura's home on Father's Day in 2019, multiple police officers arrived and began interviewing people. According to Jonathan, police were there to investigate a complaint made by Victoria that Laura was abusing her, but the Department eventually concluded that Laura was "not guilty" of the allegations. He said, since that time, he does not feel comfortable being around Victoria and avoids being alone with her.

Barrios was convicted as charged and was sentenced as set forth above. This appeal followed.

## II.    DISCUSSION

### A.    Sufficiency of the Evidence

#### 1.    Standard of Review and Applicable Law

To satisfy constitutional due process requirements, a criminal conviction must be

---

[4] Specifically, according to Wagner, Victoria reported that Laura "slapped her in the face" and "yells at her excessively."

[5] At a hearing outside the presence of the jury, when asked whether Victoria was being untruthful when she made her allegations in 2020, Wagner explained:

> When I spoke to [Victoria], she said that [Laura] had slapped her in the face but couldn't recall all the circumstances around it. And [the Department] has a definition for physical abuse. And, like, for example, if a parent slaps a child in the face but it doesn't leave a mark or a bruise, it depends on how old the child is whether it will fit in the definition of physical abuse.

supported by sufficient evidence. *See Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). "Evidence is sufficient to support a criminal conviction if a rational jury could find each essential element of the offense beyond a reasonable doubt." *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In a sufficiency review, we view the evidence in the light most favorable to the verdict and consider all of the admitted evidence. *Id.* We consider both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from the evidence and are not mere speculation. *See id.*; *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). "The jury is the sole judge of credibility and weight to be attached to the testimony of the witnesses"; therefore, "[w]hen the jury could reasonably draw conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict." *Stahmann*, 602 S.W.3d at 577; *see* TEX. CODE CRIM. PROC. ANN. art. 38.04.

Sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). A hypothetically correct charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* (citing *Malik*, 953 S.W.2d at 240). "The law 'authorized by the indictment' consists of the statutory elements of the offense as modified by the indictment allegations." *Id.*

Here, a hypothetically correct charge would instruct the jury that Barrios is guilty:

7

(1) of sexual assault as alleged in Count I if he intentionally or knowingly caused the penetration of Victoria's sexual organ with his sexual organ, *see* TEX. PENAL CODE ANN. § 22.011(a)(2)(A); (2) of sexual assault as alleged in Count II if he intentionally or knowingly caused the penetration of Victoria's mouth with his sexual organ, *see id.* § 22.011(a)(2)(B); (3) of indecency with a child as alleged in Count III if he touched any part of Victoria's genitals, including touching through clothing, with the intent to arouse or gratify his sexual desire, *see id.* § 21.11(a)(1), (c)(1); and (4) of indecency with a child as alleged in Count IV if he touched Victoria's breast with the intent to arouse or gratify his sexual desire. *See id.*[6]

A person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to cause the result. *Id.* § 6.03(a). A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b). Intent may generally be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

**2.    Analysis**

By his first four issues on appeal, Barrios contends the evidence was insufficient to sustain the verdicts of guilt. He does not dispute that Victoria provided testimony at trial which, if believed, would directly support each element of each of the four counts. *See* TEX. PENAL CODE ANN. §§ 21.11(a)(1), 22.011(a)(2)(A), (a)(2)(B). Instead, he argues that Victoria's testimony was "incredible and illogical."

---

[6] It is undisputed that, at the time of the alleged offenses, Victoria was under the age of seventeen, which is an essential element of all four counts. *See* TEX. PENAL CODE ANN. §§ 22.011(c)(1), 21.11(a).

First, he contends that "the fact that anyone would return to an abuser three separate times after the increasingly offensive alleged conduct describe[d] by [Victoria] is illogical and a highly improbable response by any alleged victim under these circumstances." Second, he claims that "[t]he fact that the alleged incidents occurred suddenly, and in the home, without any prior misconduct of any kind by [Barrios] against [Victoria], makes it even more improbable and unlikely" that Victoria's testimony was truthful. He observes that, in 2020, Victoria made allegations of physical abuse against Laura which were "ruled out" by the Department. The jury also heard Laura's testimony that Barrios has not been physically able to engage in sexual relations with her since 2020. Barrios further notes that, although DNA matching his own was found on Victoria's abdomen, the forensic analyst did not know how any DNA could have been transferred there. Finally, he emphasizes that Victoria "had a motive to make a false allegation" against Barrios because she did not like living in his house, and she instead wanted to be with her father Benjamin. In this regard, he notes that, the day before making her outcry, Victoria overheard Laura and Nicole discussing the potential termination of Benjamin's parental rights. He also points to Weller's testimony that Victoria referred to Barrios as a "wetback" and argues that, according to Weller, Victoria "said that [Barrios] only touched her on the butt."[7]

We disagree with Barrios that Victoria's testimony was "incredible and illogical" or that no reasonable juror could have believed her. Her trial testimony was clear, direct, free from internal contradictions, and consistent with the reports she made to the forensic interviewer and the SANE nurse. Moreover, Victoria's testimony was at least partially

---

[7] We note that, according to the trial transcript, Weller did not use the word "only."

9

corroborated by evidence from the SANE exam that she had irritation on her genitals and petechiae on her breasts, and by evidence that DNA matching Barrios was found on swabs taken from Victoria's abdomen and breasts.

In any event, the jury found Victoria to be a credible witness in this case, and because it is the sole judge of witness credibility, *Stahmann*, 602 S.W.3d at 577, we may not disturb that determination on appeal. The code of criminal procedure specifically provides that a conviction for sexual assault of a child or for indecency with a child "is supportable on the uncorroborated testimony of the victim" alone. TEX. CODE CRIM. PROC. ANN. art. 38.07(a); *see Saldivar-Lopez v. State*, 676 S.W.3d 851, 859 (Tex. App.—Corpus Christi–Edinburg 2023, no pet.); *Wishert v. State*, 654 S.W.3d 317, 328 (Tex. App.—Eastland 2022, pet. ref'd). "Courts give wide latitude to testimony given by child victims of sexual abuse." *Gonzalez Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.) (citing *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990)). "The victim's description of what happened to her need not be precise, and she is not expected to express herself at the same level of sophistication as an adult." *Id.* And, though there was at least some probative physical evidence in this case, "[t]here is no requirement that the victim's testimony be corroborated by medical or physical evidence." *Id.* (citing *Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.–Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006) (noting that "[t]he lack of physical or forensic evidence is a factor for the jury to consider in weighing the evidence")).

For the foregoing reasons, the evidence was sufficient to support the convictions. *See* TEX. PENAL CODE ANN. §§ 21.11(a)(1), 22.011(a)(2)(A), (a)(2)(B). We overrule Barrios's first four issues.

10

**B.     Evidentiary Rulings**

By his final two issues, Barrios argues the trial court erred in its ruling on the admissibility of evidence. "We review a trial court's ruling on the admissibility of evidence under an abuse of discretion standard, and we must uphold the trial court's ruling if it was within the zone of reasonable disagreement." *Wells v. State*, 611 S.W.3d 396, 427 (Tex. Crim. App. 2020).

**1.     Exclusion of Victoria's Prior Sexual Abuse Allegations**

On the final day of testimony,[8] defense counsel called Victoria and Wagner in order to make an offer of proof outside of the presence of the jury. Victoria explained that, after she made the allegation of physical abuse against Laura in 2020, she went to the CAC for an interview on June 25, 2020. Victoria agreed that, in that CAC interview, she accused three people of having sexually abused her: her mother, a man named Joshua Florence, and an unnamed individual wearing a police officer's uniform. Victoria also recalled that she made a complaint of abuse by her mother and Florence in 2012, when she was around six years old, and she was interviewed at CAC then as well.[9] Wagner said she was informed by police that the notes from the 2012 interview "stated 'coached.'" However, Wagner was not aware what specific allegation that note referred to, and she could not say the allegations were false. She observed that, as a result of the 2012 CAC interview, Victoria's mother was convicted and placed on probation for causing injury to

---

[8] Prior to trial, the State filed a motion in limine seeking to exclude, among other things, "[a]ny reference that the alleged victim has made a prior outcry of sexual abuse or any allegation that the prior outcry was false." The record reflects that defense counsel agreed not to make any such reference until the court could rule on its admissibility.

[9] It is unclear whether Victoria's 2012 complaint was based on the same alleged conduct as the 2020 complaint.

a child.

Following the offer of proof, the trial court sustained the State's relevance and Rule 403 objections to testimony regarding Victoria's prior allegations of sexual abuse.[10] *See* Tex. R. Evid. 401, 403. However, the court permitted counsel to inquire about Victoria's prior allegations that Laura slapped her and yelled at her and caused her to feel unsafe at the home. As noted above, Victoria conceded at trial that she alleged in 2020 that Laura emotionally and physically abused her, but the Department ruled out those allegations.

By his fifth issue on appeal, Barrios argues that the evidence about Victoria's prior sexual abuse allegations should have been admitted. He contends this evidence was offered "not as general evidence of truthfulness, but rather to support [his] theory that [Victoria] had a motive to falsely accuse [him], be removed from [his] house, and live with her father." He argues that the evidence was more probative than prejudicial and was therefore admissible under Rule 403. He further contends that, as a result of the trial court's ruling, he was deprived of his Sixth Amendment right to confront witnesses.

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Tex. R. Evid. 401. But "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative

---

[10] The court stated:

> I find that the prior allegations of abuse are too remote, not sufficiently related, relevant, tied to, or otherwise connected to the current allegation against this defendant and not necessarily false, and that regardless of any limited relevance they may have, that relevance is substantially outweighed by the danger of unfair prejudice, confusing the issues for the jury, and misleading the jury . . . .

evidence." TEX. R. EVID. 403.[11] Under the Sixth Amendment's Confrontation Clause, a defendant has the right to attack a witness's credibility, and a trial court may not "prevent a defendant from pursuing his proposed line of cross examination when it can be said that a reasonable jury might have received a significantly different impression of the witness's credibility had counsel been permitted to do so." *Johnson v. State*, 490 S.W.3d 895, 909 (Tex. Crim. App. 2016) (cleaned up). But "the right to cross-examine is not unqualified" and "[t]rial judges retain wide latitude under the Confrontation Clause to impose restrictions on cross-examination based on such criteria as harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant." *Id.* at 909–10 (cleaned up).

Barrios argues on appeal that the excluded evidence "supported [his] theory that [Victoria] had a motive to falsely accuse [him] of sexual abuse and has done so in the past against others," and was therefore "admissible to prove motive under [] Rule 404(b), Rule 613(b), and Rule 412." We disagree. The excluded evidence indicated that Victoria

---

[11] Evidence regarding "specific instances of a victim's past sexual behavior" is inadmissible unless the court determines after an in-camera hearing that the probative value of the evidence outweighs the danger of unfair prejudice and that the evidence:

    (A)    is necessary to rebut or explain scientific or medical evidence offered by the prosecutor;

    (B)    concerns past sexual behavior with the defendant and is offered by the defendant to prove consent;

    (C)    relates to the victim's motive or bias;

    (D)    is admissible under Rule 609 [regarding evidence of a criminal conviction offered to attack a witness's character for truthfulness]; or

    (E)    is constitutionally required to be admitted.

TEX. R. EVID. 412. The State did not object to the subject evidence on these grounds.

accused three people of sexual abuse in 2020, and she also made unspecified allegations of abuse against two people in 2012. The notes from Victoria's 2012 forensic interview "stated 'coached,'" but no witness was able to clarify what this note actually meant or to which specific allegations it pertained. Even assuming the 2012 allegations were based on exactly the same conduct as the 2020 allegations, there was no other evidence indicating that these allegations were false or fabricated. Further, because the allegations of sexual abuse in particular did not involve Laura or Barrios, the evidence did not demonstrate that Victoria harbored a bias or animus against them, nor did it tend to establish that Victoria had a motive to fabricate allegations against Barrios so as to affect the credibility of her testimony in this case.[12] We conclude the trial court did not abuse its discretion by excluding this evidence on relevance grounds. *See* TEX. R. EVID. 401. We further conclude that Barrios's Sixth Amendment right to confront witnesses was not violated by the trial court's ruling. *See Johnson v. State*, 490 S.W.3d at 909–10. Barrios's fifth issue is overruled.

### 2. Admission of Barrios's Sexual Relationship with Laura as a Minor

By his sixth and final issue, Barrios argues the trial court erred by admitting evidence that he had sexual relations with Laura when Laura was sixteen years old and while he was still married to Laura's mother.

Rule 404(b) states that "[e]vidence of a crime, wrong, or other act is not admissible

---

[12] Though Barrios claims the excluded evidence was offered to establish Victoria's motive to fabricate allegations against him, we observe that may have also been offered in a general attempt to impeach Victoria's character for truthfulness. In that regard, we note that, "[e]xcept for a criminal conviction under Rule 609 [regarding impeachment by evidence of a criminal conviction], a party may not inquire into . . . specific instances of the witness's conduct in order to attack or support the witness's character for truthfulness." TEX. R. EVID. 608(b). Victoria was not convicted of a crime; therefore, the excluded testimony was not admissible to impeach her credibility. *See id.*

to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b). However, notwithstanding Rule 404, evidence that a defendant accused of a sexual offense has committed a separate sexual offense[13] "may be admitted . . . for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b). Prior to trial, the State notified Barrios that it would be offering the subject evidence, and as required by the statute, the court held a hearing outside of the presence of the jury to determine its admissibility. *See id.* § 2-a(2). At the hearing, the State argued that the testimony was admissible under the statute because it showed that Barrios committed sexual assault of a child against Laura. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(A). The State further argued that the affirmative defenses to sexual assault of a child contained in penal code § 22.011(e) did not apply because: (1) Barrios was not married to Laura at the time; (2) Barrios was more than three years older than Laura; and (3) Barrios was prohibited from marrying or having sexual relations with Laura because she was his stepdaughter. *See id.* § 22.011(e); *see also id.* §§ 25.01, 25.02(a)(2).[14] Finally, the State

---

[13] The sexual offenses to which the statute applies include sexual assault of a child and indecency with a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(a)(1)(C), (D).

[14] Section 22.011(e) states that the following are affirmative defenses to sexual assault of a child:

(1)     that the actor was the spouse of the child at the time of the offense; or

(2)     that:

    (A)     the actor was not more than three years older than the victim and at the time of the offense:

        (i)     was not required under Chapter 62, Code of Criminal Procedure, to register for life as a sex offender; or

argued the evidence is relevant because it shows Barrios "has a history of having sexual relations and sexually abusing people who are too young to consent to that." The trial court found that "the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt" and therefore admitted the testimony under Article 38.37. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2-a(1).

Barrios appears to argue that the trial court erred in admitting the testimony under Article 38.37. We disagree. Laura's testimony that she had sex with Barrios when she was sixteen years old was clear and unequivocal, and it is undisputed that Barrios was married to Virginia at the time. Therefore, Laura's testimony would have been adequate to support a finding beyond a reasonable doubt that Barrios committed sexual assault of a child against her. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(A). And, as the State observes, Laura's testimony was relevant insofar as it demonstrated that Barrios acted in conformity with his character when he committed sexual assault of Victoria, a child of a

---

        (ii)      was not a person who under Chapter 62, Code of Criminal Procedure, had a reportable conviction or adjudication for an offense under this section; and

   (B)    the victim:

        (i)      was a child of 14 years of age or older; and

        (ii)      was not:

           (a)     a person whom the actor was prohibited from marrying or purporting to marry or with whom the actor was prohibited from living under the appearance of being married under Section 25.01; or

           (b)     a person with whom the actor was prohibited from engaging in sexual intercourse or deviate sexual intercourse under Section 25.02.

TEX. PENAL CODE ANN. § 22.011(e).

similar age. *See* Tex. R. Evid. 401; Tex. Code Crim. Proc. Ann. art. 38.37, § 2(b). The trial court did not err by concluding the evidence was admissible under Article 38.37.

Barrios further contends that, even if the evidence was admissible under Article 38.37, it violated Rule 403 because it was unfairly prejudicial and too remote in time to be of probative value. *See* Tex. R. Evid. 403. He cites caselaw establishing that, "[w]hen evidence of a defendant's extraneous acts is relevant under Article 38.37, [§] 2(b), the trial court is still required to conduct a Rule 403 balancing test *upon proper objection or request*." *Hitt v. State*, 53 S.W.3d 697, 706 (Tex. App.—Austin 2001, pet. ref'd) (emphasis added); *see Belcher v. State*, 474 S.W.3d 840, 847 (Tex. App.—Tyler 2015, no pet.). However, Barrios does not point to any location in the hearing or trial record, and we find none, in which his counsel actually made any "proper objection or request" based on Rule 403 regarding this testimony. Accordingly, we may not reverse the trial court's decision on this basis. *See* Tex. R. App. P. 33.1(a). Barrios's sixth issue is overruled.

### III. Conclusion

We affirm the trial court's judgments.

DORI CONTRERAS
Chief Justice

Do not publish.
Tex. R. App. P. 47.2 (b).

Delivered and filed on the
1st day of February, 2024.